**SHOSHONE FIRST BANK, and United Bancorporation of Wyoming, Inc., Appellants (Defendants),**

v.

**PACIFIC EMPLOYERS INSURANCE CO., Appellee (Plaintiff).**

No. 98–146.

Supreme Court of Wyoming.

April 3, 2000.

Representing Appellants: Dan B. Riggs and Jonathan A. Botten of Lonabaugh and Riggs, Sheridan, Wyoming.

Representing Appellee: Thomas A. Nicholas of Hirst & Applegate, P.C., Cheyenne, Wyoming; and Kevin F. Amatuzio of Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Denver, Colorado.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The only question presented in this case relates to the allocation to, and recovery from, an insured by an insurance carrier of part of the costs and expenses of litigation. Pacific Employers Insurance Company (Pacific) seeks to allocate and recover for both the costs attributable to non-covered claims under the policy and the costs attributable to a counterclaim. Shoshone First Bank and United Bancorporation of Wyoming, Inc. (collectively Shoshone) vigorously assert that the allocation and recovery of the costs of litigation should not be permitted. This case comes to us as a question certified from the United States District Court for the District of Wyoming. In answering the certified question, we hold that the allocation and recovery of the costs attributable to the defense of claims that were not covered by the policy of insurance is not permitted under Wyoming law so long as one or more of the claims alleged is covered by the insurance policy. We further hold that the allocation and recovery of costs attributable to the prosecution of a counterclaim belonging to the insured is permitted, without regard to any tactical or strategic justification for asserting the counterclaim.

The certified question presented by the United States District Court for the District of Wyoming, pursuant to Wyo. Stat. Ann. §§ 1–13–104 through 1–13–107 (Lexis 1999) and W.R.A.P. 11 is:

Does Wyoming law recognize a legal or equitable right of insurer allocation, allowing the insurer to allocate to its insured and recover either (1) the costs of defending non-covered claims, where there is at least one covered claim and the insurer has already paid for the defense, or (2) the costs of bringing a counterclaim, where there is at least one covered claim and the insurer has already paid for the litigation of the counterclaim?

Both parties faithfully reproduced the certified question in stating the issue in the case.

Our appellate rules request that a certification order include "a statement of all facts relevant to the questions certified." W.R.A.P. 11.03(b). In this instance, however, we did permit the parties to file an additional record consisting of a set of stipulated facts that the parties presented to the United States District Court for the District of Wyoming. This Court, however, has no authority to resolve any factual questions, and we turn primarily to the Certification Order of the United States District Court for the District of Wyoming in articulating the facts material to our decision.

Pacific seeks a declaratory judgment determining that, upon the facts of this case and under Wyoming law (which the parties agree applies to this controversy), Pacific is entitled to recover from Shoshone those expenses incurred in litigation that are attributable to uncovered claims. Pacific asserts both contractual and equitable grounds in support of its position. Shoshone answered Pacific's complaint, denying Pacific's entitlement to relief and asserting that insurer allocation is not recognized in Wyoming. Shoshone also has asserted counterclaims against Pacific, including claims of breach of contract and insurance bad faith. The parties, however, have entered into a Stipulation, approved by the United States District Court, which substantially narrows and limits the issues in the case. Pursuant thereto, the parties have agreed

to limit further litigation in this matter to [Pacific's] First Claim for Relief (declaratory judgment) and [Shoshone's] Sixth Claim for Relief (declaratory judgment) respecting the Plaintiff's asserted legal and

equitable right, if any, under Wyoming law and the facts of this case, to (a) allocate to and recover from its insureds a portion of the cost of defending the [disgruntled director's] lawsuit on the basis that Plaintiff's policy of insurance did not cover some of the claims asserted against the Defendants by [the director], and (b) to allocate and recover from its insureds a portion of the cost of the [director's] lawsuit on the basis that Shoshone asserted a counterclaim in the [director's] lawsuit.

Pacific and Shoshone each filed a motion for summary judgment on the remaining issues, as defined by the Stipulation.

Pacific issued a policy of commercial general liability insurance (Policy) to Shoshone for a policy period from December 5, 1990 through December 5, 1991. The Policy contains a standard commercial general liability coverage form issued by the Insurance Service Office. The duty to defend clause states:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. * * * We will have the right and duty to defend any "suit" seeking those damages * * *.

Coverage under the Policy for "bodily injury" and "property damage" applies only if the injury or damage is caused by an "occurrence" during the policy period, as those terms are defined therein:

3. "Bodily injury" means bodily injury, sickness or disease sustain by a person, including death resulting from any of these at any time.

* * *

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Policy also contains "Coverage B" for personal and advertising injury liability:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "ad-

vertising injury" to which this insurance applies.

The Policy contains the following exclusion: This insurance does not apply to: "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The action out of which the current dispute arose was filed on November 7, 1995, by a disgruntled former director, alleging that his termination on November 15, 1991 constituted a breach of contract, breach of the covenant of good faith and fair dealing, invasion of privacy, infliction of severe emotional distress, and abuse of process. On November 8, 1995, the chairman of Shoshone mailed copies of the complaint to Shoshone's insurance agent, seeking defense of the claims, and also to Shoshone's retained attorneys. Pacific did not respond prior to the date an answer was due. Therefore, Shoshone's retained attorneys filed an answer and a counterclaim. Following that filing, Shoshone received, a December 4, 1995, letter from a liability specialist at Pacific reserving the insurer's rights pending further investigation of its rights and obligations concerning the complaint. In March of 1996, Pacific agreed to defend Shoshone under a continuing reservation of rights. Pacific undertook the defense because, according to the liability specialist, Count IV of the complaint, alleging invasion of privacy, was potentially covered by Shoshone's policy. Pacific, however, asserted that it was entitled to allocate to Shoshone the costs of the defense related to uncovered claims. The director's action later was settled by court-ordered mediation. The total settlement, the exact amount of which is confidential, was a fraction of the more than $215,000.00 paid by Pacific to defend the suit and the additional $40,000.00 in fees and costs that Pacific declined to pay and Shoshone did pay. On December 4, 1997, Pacific sued Shoshone seeking recovery of the portion of the defense costs paid to defend the uncovered claims and to assert the counterclaim.

■ Certain fundamental principles of law are well established in Wyoming. An insurance policy is a contract between the insurer and the insured, and the policy is subject to the usual rules of contract construction and interpretation. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo. 1993); *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.*, 860 P.2d 1094, 1097 (Wyo.1993); *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo.1988).

■ If the court is satisfied that the terms of the policy are clear and not ambiguous, the policy must be interpreted by applying the ordinary and usual meaning of its terms without looking beyond the four corners of the policy. *Doctors' Co.*, 864 P.2d at 1024; *First Wyoming Bank, N.A., Jackson Hole*, 860 P.2d at 1097; *Alm v. Hartford Fire Ins. Co.*, 369 P.2d 216, 217 (Wyo.1962). If the language is ambiguous, the construction afforded the ambiguous language will be the meaning that favors the insured. *Alm*, 369 P.2d at 218.

■ The duty of the insurer to defend is more extensive than its duty to indemnify the insured. *First Wyoming Bank, N.A., Jackson Hole*, 860 P.2d at 1097; *Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 (Wyo.1980). We defined the duty to defend in *First Wyoming Bank, N.A., Jackson Hole*, 860 P.2d at 1097, by this language:

Analysis of the duty to defend is not made based on the ultimate liability of the insurer to indemnify the insured or on the basis of whether the underlying action is groundless or unsuccessful. *Lythgoe*, 618 P.2d at 1061 (*citing Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968); *Burger v. Continental Nat'l American Group*, 32 Ohio Misc. 161, 441 F.2d 1293 (6th Cir.1971)). Instead, we analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon. *Lythgoe*, 618 P.2d at 1061 n. 2. *See also Garvis v. Employers Mut. Casualty Co.*, 497 N.W.2d 254, 258 (Minn. 1993); *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 595 N.Y.S.2d 988, 990 (1993).

The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage. *Hutchinson Oil Co. v. Federated Service Ins. Co.*, 851

F.Supp. 1546, 1553 (D.Wyo.1994) (*quoting Axton Cross Co., Inc. v. Lumbermen's Mut. Cas. Co.*, 176 A.D.2d 482, 574 N.Y.S.2d 561, 562 (1991)). The obligation to defend is an independent consideration in liability insurance, and it is invoked by any claim alleged in the complaint that is potentially covered under the policy. *First Wyoming Bank, N.A., Jackson Hole*, 860 P.2d at 1099–1100. Pacific acknowledged that the coverage of its policy extended to the claim for invasion of privacy because, at least potentially, that claim would qualify under the "personal injury" coverage. The plain language of the Policy issued to Shoshone by Pacific in the general liability policy Coverage B, states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. * * * We will have the right and duty to defend any "suit" seeking those damages.

"Suit," as defined by the Policy, "means a civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies are alleged." The claim asserting an invasion of privacy specifically qualifies under the "personal injury" coverage of Shoshone's policy.

■ The problem presented by Pacific and Shoshone relates to the assumption by Pacific for the total cost of defending all the claims presented in the director's complaint. Pacific contends that it is responsible for those defense costs attributable to the claim for invasion of privacy only. It contends that it is entitled to allocate the defense costs between the claim for invasion of privacy and all the other claims involved and seek compensation from Shoshone for the costs of defending the other claims. Shoshone contends that the allocation of and claim for reimbursement of the other defense costs is inappropriate and should be denied. In *Alm*, 369 P.2d at 219, we adopted, with approval, this language from *Ritchie v. Anchor Cas. Co.*, 135 Cal.App.2d 245, 286 P.2d 1000, 1006 (1955): "If the complaint filed against the insured alleges several causes of action, some of which are not covered by the policy but

one or more is within its terms, the insurer is bound to defend the action * * *." We went on to point out that even if doubt exists with respect to the duty to defend, it should be resolved in favor of the insured. The duty to defend, therefore, extends to the entire suit brought against the insured. Even though the duty to defend is present, it does not require payment of a judgment based on claims other than those covered by the policy.

■ The question of allocation of the costs of defense is an issue of first impression in Wyoming. Pacific urges upon us the majority position which permits allocation of litigation expenses when the action against the insured involves both covered and uncovered claims. Recognizing that in other jurisdictions allocation is allowed between the insurer and the insured, we eschew this theory, and hold that unless an agreement to the contrary is found in the policy, the insurer is liable for all of the costs of defending the action. *See Timberline Equipment Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 576 P.2d 1244, 1247 (1978).

■ Pacific contends that under the authorities it favors it is only required to pay those defense costs in the action by the director that relate to the covered claim for invasion of privacy, and Shoshone is responsible for the costs of defending the other five non-covered claims set forth in the complaint. No definition of the "duty to defend" nor of "claims" is set forth in the Policy. Under our articulated principles of contract interpretation relating to insurance policies, an ambiguity arises because of the undefined terms, and the policy will be strictly construed against the insurer, requiring Pacific to defend Shoshone on all claims. *Albany County School Dist. No. 1*, 763 P.2d at 1258. Any doubt with respect to that coverage must be resolved in favor of the insured. *Alm*, 369 P.2d at 219. Pacific's failure to treat with the allocation of defense costs in the policy results in an assumption by the insured that Pacific will pay the full cost of the defense. We construe the policy in favor of Shoshone to that end.

Pacific urges the adoption of the reasoning of the Supreme Court of California in *Buss v.*

*Superior Court,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997), which allowed the allocation of the costs of defense. We have opted to follow a different policy with respect to the duty to defend, but we think the court in *Buss* very eloquently articulated the pragmatic difficulty of mounting only a partial defense of the insured:

> [W]e can, and do, justify the insurer's duty to defend the entire "mixed" action prophylactically, as an obligation imposed by law in support of the policy. To defend meaningfully, the insurer must defend immediately. (*Montrose Chemical Corp. v. Superior Court, supra,* [6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)].) To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The "plasticity of modern pleading" (*Gray v. Zurich Insurance Co., supra,* [65 Cal.2d 263, 276, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)]) allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa.

*Buss,* 65 Cal.Rptr.2d 366, 939 P.2d at 775. This language illustrates the problems that can be anticipated if the insurer is permitted to pick and choose which claims it will defend. Added to those difficulties would be the predicament of the insured in having to obtain separate counsel to defend non-covered claims and potential disagreements between members of the defense team. Such a policy necessarily would lead to inefficiency and perhaps inconsistency in the resolution of disputes.

Because of our prior recognition that the insurer is charged with the duty of defending the entire suit, and in light of the problems discussed in *Buss,* we opt to follow the minority rule, and we will not permit allocation. Illinois and Louisiana do not allow allocation of defense costs. In *Riley Stoker Corp. v. Fidelity and Guar. Ins. Underwriters, Inc.,* 26 F.3d 581, 589 (5th Cir.1994), the United States Court of Appeals for the Fifth Circuit looked to the law of Louisiana to determine whether apportionment between covered and uncovered claims could be made. The court

cited *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993) in which the Louisiana Supreme Court held "that the insurer, who had a duty to defend, was obligated to pay defense costs even though it was ultimately determined in the coverage suit that none of the claims were covered." *Riley Stoker Corp.,* 26 F.3d at 589–90. The United States Court of Appeals for the Fifth Circuit rejected the insurance company's effort to apportion the costs of defense. The Appellate Court of Illinois considered the policy requiring defense on the entire suit, and it also refused to allow allocation of defense costs. *Bedoya v. Illinois Founders Ins. Co.,* 293 Ill.App.3d 668, 228 Ill.Dec. 59, 688 N.E.2d 757, 762 (1997).

It is obvious that no right of allocation should exist if the costs incurred for the defense of a non-covered claim were necessarily incurred or would have had to be incurred because of the defense of a covered claim. *See* 1 Allan D. Windt, *Insurance Claims & Disputes,* § 4.13 at 201–03 & n. 162 (3d ed. Shepard's/McGraw–Hill 1995). This indeed was the case so far as Shoshone and Pacific were concerned. The Policy required Pacific to defend Shoshone in any suit and not simply for specific claims. There is no indication in the Policy of any distinction to be made between covered and non-covered claims so far as the defense of those claims is concerned, and we will not permit the Policy to be modified by subsequent letters from the insurer to the insured. Pacific attempts to modify the Policy despite the deficiencies of the Policy.

■ Pacific claims the right to allocate the defense costs for the uncovered claims through a reservation of rights letter. In the reservation of rights letter, written January 8, 1997, from Pacific to Shoshone, Pacific specifically reserved the right to make an allocation of the fees, expenses and indemnity payments when the case was resolved, and it addressed both covered and uncovered claims. The insurer is not permitted to unilaterally modify and change policy coverage. We agree with the Supreme Court of Hawaii that a reservation of rights letter "does not relieve the insurer of the costs incurred in defending its insured where the insurer was obligated, in the first instance, to provide

such a defense." *First Ins. Co. of Hawaii, Inc. v. State, by Minami,* 66 Haw. 413, 665 P.2d 648, 654 (1983). Pacific could have included allocation language in the Policy, but it failed to do so. We look only to the four corners of the policy to determine coverage, and where the policy is unambiguous, extrinsic evidence is not considered. *Doctors' Co.,* 864 P.2d at 1024. The Policy issued to Shoshone by Pacific states a duty to defend, and allocation is not mentioned. In light of the failure of the policy language to provide for allocation, we will not permit the contract to be amended or altered by a reservation of rights letter.

Usually we do not cite to judicial decisions that have not been published. We have been advised, however, of a very clear and incisive articulation of the problem that confronts us in a recent order of the United States District Court for the District of Wyoming granting a summary judgment. In that order, the United States District Court Judge captured the public policy with respect to why insurers should not be entitled to recoup defense costs from their insureds under a reservation of rights. The court said:

15. A reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds.

16. The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy. However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice. Furthermore, endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this became common practice, the insurance industry might extract coercive arrangements from their insureds, destroying the concept of liability and litigation insurance.

Order on Plaintiff's Motion for Summary Judgment, *America States Ins. Co. v. Ridco, Inc., Riddles Jewelry, Inc., and Ken B. Berger,* Civ. No. 95CV158D (D.Wyo.1999).

■ We turn then to the other question presented by the certification order of the United States District Court for the District of Wyoming which addresses the allocation of costs in connection with Shoshone's counterclaim. We invoke our rule that if an insurance policy fails to specify coverage for prosecuting counterclaims, the policy language will not be "tortured" to create an ambiguity. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 539 (Wyo.1996); *Doctors' Co.,* 864 P.2d at 1024. The policy issued to Shoshone by Pacific did not obligate the insurer to prosecute any claims. For that reason, we will not require Pacific to assume any of the costs incurred with respect to Shoshone's counterclaims for indemnity and breach of duty of loyalty against the director.

■ We accept the general premise that "[a]n insurer, being obligated only to defend claims brought 'against' the insured, is not required to bear the cost of prosecuting a counterclaim on behalf of the insured." 1 Allan D. Windt, *Insurance Claims & Disputes, supra,* § 4.41 at 277. Other jurisdictions have manifested their accord with this proposition. The Supreme Court of Utah has recognized that an insurance policy that provided that the insurer investigate, defend, or settle any claims against the insured at its own expense, but which did not include providing any representation for the insured in an action against the other party, imposed no obligation on the insurer to do so. *Berlant v. McAllister,* 25 Utah 2d 237, 480 P.2d 126, 127 (1971). *See also Goldberg v. American Home Assur. Co.,* 80 A.D.2d 409, 439 N.Y.S.2d 2, 4 (1981) (holding the duty to

defend does not encompass counterclaims); and *Reynolds v. Hartford Acc. & Indem. Co.*, 278 F.Supp. 331, 333 (S.D.N.Y.1967) ("[a]s the insurance contract never contemplated the obligation to bring affirmative claims on behalf of its assured and the prosecution of counterclaims would no doubt entail extra expenditures on the part of the insurance carrier, to imply an obligation on its part to bring counterclaims would be manifestly unfair.").

 Shoshone argues that because the facts and circumstances of its counterclaim against the director were inextricably intertwined with the facts and circumstances that formed the basis for the director's action against Shoshone, it was necessary to interject the counterclaim for a proper defense. A major difficulty with this contention is that the stipulation between Shoshone and Pacific forecloses the position that the counterclaims were "inextricably intertwined" with the allegations of the complaint, thus permitting the allocation of costs. Pacific points to *Morgan, Lewis & Bockius LLP v. Hanover Ins. Co.*, 929 F.Supp. 764, 771–73 (D.N.J.1996) and contends that the principle there articulated that, no matter how factually intertwined the claims may be, the insurer is not obligated to fund counterclaims should be adopted. We do so.

In summary, unless a policy between an insured and an insurer provides for allocation of defense costs in the instance in which some claims are covered and some are not, Wyoming will not allow allocation of defense costs from the insurer to the insured. Because the insurer must defend the entire action, permitting allocation with respect to the representation on every claim in the action would lead to judicial inefficiency and a failure to resolve actions timely and consistently. With respect to the costs of prosecuting a counterclaim, unless the policy specifically provides coverage for those expenses, we will not amend the contract. Because there was no coverage for prosecuting the counterclaim in this case, Pacific is not required to assume the expense of Shoshone's counterclaims, and it must be allowed to allocate and recover those costs.

The first proposition posed in the certified question by the United States District Court for the District of Wyoming is answered "No." The second proposition articulated in the certified question from the United States District Court for the District of Wyoming is answered "Yes."