2006 WY 56

**Heidi Rene LAWRENCE, Personal Representative of the Estate of Cody Lee Holt, Assignee of Valerie Johnson and D'Andra Amende, Appellant (Plaintiff),**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Appellee (Defendant).**

No. 05–191.

Supreme Court of Wyoming.

May 10, 2006.

Representing Appellant: Michael C. Steel of Lonabaugh and Riggs, LLP, Sheridan, Wyoming.

Representing Appellee: George E. Powers Jr., of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Heidi Rene Lawrence (as personal representative for the estate of Cody Lee Holt and as assignee of Valerie Johnson and D'Andra Amende) (hereafter Lawrence), seeks review of the district court's partial summary judgment order to the effect that Appellee, State Farm Fire and Casualty Company (State Farm), had no duty to provide a defense on behalf of Valerie Johnson or D'Andra Amende, in connection with Lawrence's lawsuit against them. Lawrence sought to recover damages from Valerie Johnson and D'Andra Amende for negligent act(s) they committed and which Lawrence claimed were covered by Valerie Johnson's homeowner's insurance policy issued by State Farm. We will affirm.

## ISSUES

[¶ 2] In her initial brief, Lawrence states this as the only issue on appeal:

Did [State Farm] breach the subject insurance policy by refusing to defend its insured, Valerie Johnson, against the negligence claim alleged in the underlying action?

State Farm poses this issue as the appropriate one for our consideration:

When [Lawrence] sued Valerie Johnson for damages caused by the death of Cody Lee Holt in an [sic] one-car automobile accident involving Johnson's car, was [State Farm] required to defend that claim under Johnson's homeowner's policy which contained an exclusion for damages "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned . . . by . . . any insured . . . ?"

In her reply brief, Lawrence enlarges considerably on her understanding of the issues:

1. This appeal does not involve a negligent entrustment claim. [Lawrence] concedes that the "instrumentality" argument repeated throughout State Farm's brief

makes sense in the context of negligent entrustment claims. It makes sense because such claims, by definition, require the plaintiff to establish the insured's ownership and control of a motor vehicle. [Lawrence's] negligence claim, on the other hand, does not require proof that Valerie Johnson owned or controlled the motor vehicle. Knowingly providing "gas money" to a group of unlicensed [1] teenagers is a negligent act regardless of whose car it is used to purchase gas for.

2. This is not a case like *Matlack v. Mountain West Farm Bureau Mutual Insurance Co.*, 2002 WY 60, 44 P.3d 73 (Wyo. 2002), where the facts alleged in the underlying action did not match the "label" attached to the cause of action. In the underlying action, the factual allegations supported [Lawrence's] negligence claim. Wyoming precedent and, moreover, the policy language at issue, required State Farm to defend Johnson because there was the potential that she would be adjudged "legally liable" for damages regardless of whether she owned the car.

3. This appeal does not involve a negligent supervision claim. There is a distinct difference between relaxed supervision and active negligent conduct.

4. Johnson's affirmative act of knowingly providing the gas money was causally connected to the accident. It is too late for State Farm to argue the merits of [Lawrence's] negligence claim. It should have defended Johnson and made its argument to the jury.

## FACTS AND PROCEEDINGS

[¶ 3] No fact finding was done below. This case was disposed of below based upon the district court's construction of the contract of insurance. However, we glean these basic and largely undisputed facts from the record so as to provide context for our resolution of the arguments set out above.

[¶ 4]. Lawrence is the mother of Cody Lee Holt (Holt) and the duly appointed per-

1. Meaning that none of the four teenagers involved in this incident held a valid driver's license.

sonal representative of his estate. Holt died from injuries he suffered in a one-car crash that occurred just south of Billings, Montana, on July 4, 2003. The car that was involved in this crash was owned by Valerie Johnson (hereafter Johnson). Johnson had purchased the car for her daughter D'Andra Amende (hereafter Amende) to use, and on the date of the accident, Johnson allowed Amende to use the car and provided her with gas money so as to operate it. Johnson was not aware of what specific use Amende was going to make of the car, but Johnson and Amende were on the premises of the Johnson family home when Johnson provided the gas money to her daughter. Neither Amende nor any of the other teenagers who were occupants of the car on that date had a valid driver's license.

[¶ 5] The four teenagers proceeded to drive to Billings, where they spent the day and were then returning home to Sheridan very late in the day of July 4, 2003. During the return trip, Amende entrusted the driving of the car to another teenager, Chelsea Dailey (Dailey), who also did not have a driver's license. Dailey lost control of the car and, during the one-car crash, Holt was ejected from the automobile and crushed by it when it rolled over him. None of the occupants of Amende's car were wearing seat belts. The insurance company which covered the car owned by Johnson and driven by Amende, as well as the insurance company that covered Dailey, settled claims filed by Lawrence on behalf of her son's estate.

[¶ 6] Lawrence then initiated an additional claim against Johnson, giving notice as well to State Farm which provided Johnson with her homeowner's insurance policy. As noted above, Lawrence's theory was that Johnson's act of giving her daughter gas money (while both mother and daughter were on the premises of their home) was the negligent act that ultimately led to Holt's death.

[¶ 7] In her notice to State Farm, Lawrence called for a mediation conference to be held on April 9, 2004. By letter dated April 8, 2004, State Farm informed Lawrence's attorney that it would not participate in the conference, explaining that "the Johnson's

Homeowners Policy with State Farm Fire and Casualty Company does not provide any coverage for this accident."

[¶ 8] Johnson and Amende entered into a settlement agreement with Lawrence, resolving Lawrence's wrongful death claims against Johnson and Amende. Furthermore, these parties entered into an Assignment of Rights and Claims in which Johnson and Amende confessed judgment in favor of Lawrence in an aggregate amount of $750,000.00, and Lawrence agreed not to execute on those judgments except against State Farm. Once all of this had been accomplished, Lawrence filed her complaint against State Farm. The parties then filed cross motions for partial summary judgment.

[¶ 9] By order entered on June 22, 2005, the district court entered a partial summary judgment in favor of State Farm and denied Lawrence's motion for partial summary judgment. That order contained these findings and conclusions:

1. On July 4, 2003, Cody Lee Holt died of injuries received in an automobile accident.

2. Following the death of Cody Lee Holt, Plaintiff Heidi Lawrence presented claims and demands against various individuals, including Valerie Johnson and D'Andra Amende.

3. At the time of the automobile accident, Johnson and Amende were insured under a policy of homeowner's insurance issued by Defendant State Farm Fire and Casualty Company (hereafter "State Farm").

4. When presented with a copy of the Complaint filed in the case of *Lawrence v. Johnson and Amende*, Sheridan County District Court Civil Action No. CV2004–473, State Farm denied coverage for the claims asserted against Johnson and Amende. State Farm did not extend a defense for any of the claims asserted against Johnson and Amende.

5. Plaintiff Lawrence has taken a judgment against Johnson and Amende and has received an assignment of rights that purports to transfer Johnson's and Amende's rights against State Farm, if

any, to Lawrence. Lawrence has filed this lawsuit seeking to enforce those rights and to recover on her judgment in the *Lawrence v. Johnson and Amende* lawsuit.

6. Lawrence and State Farm have stipulated and agreed that the initial foundational issue that needs to be addressed is the issue of whether or not State Farm's homeowner's policy provided liability insurance coverage for the claims asserted in the *Lawrence v. Johnson and Amende* lawsuit. Accordingly, the parties have filed cross motions for partial summary judgment on this issue.

7. In analyzing the terms of the policy at issue and the duty to defend imposed upon an insurer, such as State Farm, this Court has been guided by the principles stated in *State ex rel. Farmers Insurance Exchange v. District Court for the Ninth Judicial District*, 844 P.2d 1099, 1101–1102 (Wyo.1993), in *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510, 513–514 (Wyo.2000) and in similar cases.

8. The State Farm homeowner's policy at issue is not ambiguous. The policy contains clear exclusions, which bar coverage for the bodily injury claims asserted by Lawrence against Johnson and Amende. The policy contains a motor vehicle exclusion, which bars coverage for bodily injury claims "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by or rented or loaned to any insured." In addition, the policy contains additional exclusions for claims arising out of an insured's entrustment or supervision of any person's use of a motor vehicle, such as the motor vehicle involved in the automobile accident involved in this case.

9. The claims asserted by Lawrence against Johnson and Amende were not covered by the terms of the State Farm homeowner's policy and State Farm had no duty to defend those claims. All of these claims arise out of the use of a motor vehicle, an instrumentality clearly excluded from coverage under the terms of the policy. To the extent that the Plaintiff asserts that there should be coverage under some alternative theory, such theories fall afoul of the express exclusions relating to entrustment and supervision claims. Under the clear and unambiguous terms of the policy, State Farm has clearly expressed the intent that the liability coverage provided by this policy would not extend to or include claims of the nature asserted against Johnson and Amende as a result of the death of Cody Lee Holt.

## IT IS THEREFORE ORDERED AS FOLLOWS:

A. State Farm is hereby granted partial summary judgment. The State Farm homeowner's policy at issue did not provide coverage for the claims asserted by Lawrence against Johnson and Amende in the *Lawrence v. Johnson and Amende* lawsuit. State Farm had no duty to defend or to indemnify Johnson and/or Amende under the allegations contained in the Complaint file therein.

B. Plaintiff's motion for Partial Summary Judgment is hereby denied.

[¶ 10] In order to ensure that an appeal could be taken from the partial summary judgment described above, without running afoul of W.R.C.P. 54(b), on August 1, 2005, the parties stipulated to a final judgment that dismissed all remaining claims with prejudice. On August 4, 2005, Lawrence amended her notice of appeal to include that order. The case was argued to the Court on December 13, 2005, and thereafter was taken under advisement.

## STANDARD OF REVIEW

[¶ 11] When we review a summary judgment, we have before us the same materials as did the district court, and we follow the same standards which applied to the proceedings below. The propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action

or defense. We, of course, examine the record from a vantage point most favorable to the party who opposed the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record. Questions of law are reviewed de novo. *Martin v. Committee for Honesty and Justice at Star Valley Ranch*, 2004 WY 128, ¶ 8, 101 P.3d 123, 127 (Wyo.2004); also see *Matlack v. Mountain West Farm Bureau Mutual Insurance Company*, 2002 WY 60, ¶ 6, 44 P.3d 73, 76–77 (Wyo.2002).

## DISCUSSION

■■ [¶ 12] We have had many occasions to address the duty to defend in circumstances that are akin to the matter at hand. In *Matlack*, ¶¶ 15–17, 44 P.3d at 79–80, we summarized much of the applicable case law and held:

> Next, we are faced with the question of whether a duty to defend existed in this case even though coverage was clearly not available. Our jurisprudence has established an insurer's duty to defend is broader than its duty to provide coverage. *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510, 513–14 (Wyo. 2000).
>
> > The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage. The obligation to defend is an independent consideration in liability insurance, and it is invoked by any claim alleged in the complaint that is potentially covered under the policy.
>
> *Id.* (citations omitted). The insurer in *Shoshone First Bank* assumed the duty to defend because a claim of invasion of privacy was made which could have potentially been considered a "personal injury" under the terms of the policy. If the policy potentially covers one or more claims, the insurer has a duty to defend all claims, and any doubts about coverage should be resolved against the insurer. *Alm v. Hartford Fire Insurance Company*, 369 P.2d 216, 219 (Wyo.1962).

Ms. Matlack argues that, unlike the situation in *Reisig [v. Union Ins. Co.*, 870 P.2d 1066 (1994)] where we found no duty to defend because conversion could not constitute an "accident" as contemplated in an insurance policy very similar to the one at issue here, her complaint recites various causes of action so that, if her claim for trespass were not covered by the policy because it involved an intentional act, other claims would arguably give rise to a duty to defend. In *Reisig*, the complaint stated only one claim for conversion. A simple reading of Ms. Matlack's amended complaint exposes the flaw in her argument. All the causes of action rely upon the same facts the intentional trespass. Simply because Ms. Matlack sought to denominate causes of action as "negligence" or "negligent infliction of emotional distress," the facts cannot be magically transformed and thereby create a duty to defend. This court rejected a similar argument in *First Wyoming Bank [v.Continental Ins. Co.]*, 860 P.2d 1094 [(1993)]. There, the Robinsons and the Russells tried to transform a breach-of-contract case into an insured claim by including a cause of action entitled "negligence." However, the underlying nature of the dispute was the bank's alleged failure to loan money to them as promised; e.g., a breach of contract. Those facts did not constitute an "occurrence" within the meaning of the policy, and, consequently, we found no duty to defend.

To determine whether a claim is rationally covered by the terms of the policy, as we said in *First Wyoming Bank*, "we analyze the duty to defend by examining the facts alleged in the complaint." 860 P.2d at 1097. "Therefore, to determine Continental's duty to defend the Bank in the Robinson/Russell litigation, we examine the terms of Continental's policy and the allegations contained in the Robinson/Russell complaint." 860 P.2d at 1097–98. The court then reviewed the complaint and found, "Although there is a claim in the complaints labeled 'NEGLIGENCE,' the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss 'caused by an occurrence,' but instead demonstrate alleged losses resulting from a breach of contract." 860 P.2d

at 1099. Further, the opinion noted that misrepresentation could have been a possible claim under the facts alleged but the claim would have required proof of an intentional act and would not constitute an "accident" or "occurrence" within the meaning of the policy. 860 P.2d at 1100. Also see generally, C.T. Drechsler, Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured upon Ground that Claim upon Which Action is Based is not Within Coverage of Policy,* 49 A.L.R.2d 694, 1956 WL 11806, esp. § 4 (1956, and Later Case Service 1999, Supp.2005).

[¶ 13] We begin our further analysis by examining the terms of the policy at issue here, keeping in mind that the alleged claim must rationally fall within the policy coverage, and that the obligation to defend is invoked by any claim alleged in the complaint that is potentially covered under the policy. The cover page of the homeowner's policy at issue here calls the policyholder's attention to this: "This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially 'Losses Not Insured' and all exclusions."

[¶ 14] In "Section II—Liability Coverages" the policy provided:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**,[2] we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice....

The word "occurrence" is defined in the policy as follows:

7. "**occurrence**," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**[.]

As noted by the district court in its order, the policy specifically excluded coverage arising out of the "ownership, maintenance, use, loading or unloading of: ... (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**[.]" as well as "**bodily injury** or **property damage** arising out of ... (1) the entrustment by any **insured** to any person; (2) the supervision by any **insured** of any person[.]"

[¶ 15] Next we examine the complaint in detail to ascertain if any claim alleged in the complaint was potentially covered under the policy. As noted in our recitation of the facts and circumstances of this case, as well as the summary of Lawrence's argument, it is contended that Johnson's act of giving her daughter gas money was an independent act of negligence (an "occurrence") that stands apart from Amende's use of the automobile and Johnson's entrustment of the vehicle to her. The complaint recites that in her demand letter, Lawrence specifically identified the giving of the gas money as an act of negligence ("You are guilty of negligence on at least two counts. First, you failed to act with reasonable care for the protection of others when you gave your daughter gas money, thereby enabling her dangerous conduct, without taking reasonable steps to investigate who was driving the car. Second, you negligently entrusted the car to your daughter, knowing that she did not have a driver's license and was not qualified, by instruction or experience, to operate the car or exercise control over the car without exposing third parties to an unreasonable risk of harm."). The remainder of the complaint, and its many attachments, bears out that one of Lawrence's claims was that Johnson's negligence was founded, in part, on her providing her daughter with gas money. It is clear from the briefs and arguments made by Lawrence to this Court that the only issue raised here, which might have put State Farm on notice that it was obligated to provide a defense, was Johnson's providing her daughter with gas money. Lawrence further contends that that discrete act can be separated out from the motor vehicle exclusion,

---

**2.** Each of the terms printed in bold is a term defined in the definition section of the policy.

as well as the entrustment/supervision exclusion. This theory is based upon the Wyoming statutes that require all drivers to have a driver's license. Wyo. Stat. Ann. § 31–7–106(a) (LexisNexis 2005), and also see §§ 31–7–108 and 31–7–110 (allowing minors to have limited and temporary driver's permits, which Amende had). Further, Wyo. Stat. Ann § 31–7–135 (LexisNexis 2005) provides: "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven or towed upon any highway by any person who is not licensed for the type or class of vehicles to be driven or is in violation of any provision of this act."

[¶ 16] We are unable to agree with Lawrence's contention for several reasons. The first is that Lawrence would have us conclude that the negligent act was Johnson giving her daughter gas money, period. We think it is evident beyond cavil that the sentence Lawrence posits must be completed like this: The negligent act, if any, was Johnson giving her daughter gas money so that she could operate the motor vehicle in question. In sum, we are unable to identify a thread of argument that we view as cogent. We think Johnson's act or acts were inextricably related to the operation of the motor vehicle and, hence, fell squarely within an exception to the insurance coverage at issue here. Thus, State Farm had no obligation to interpose a defense to Lawrence's claims. We note at this juncture that the application of the motor vehicle exclusion is dispositive of this case. The district court found that the entrustment/supervision exclusion also applied, but we need not address that issue dispositively because of our holding above.

[¶ 17] Lawrence cites many cases in her briefs. However, both in her briefs and in oral argument, Lawrence conceded that she could not cite a case that could be viewed as pertinent authority that supported the argument made above. Our independent research came to the same conclusion. At oral argument, Lawrence was asked to identify the cases that it considered to most strongly support her argument. Two cases were identified.

[¶ 18] The first was *The Salem Group v. Oliver*, 128 N.J. 1, 607 A.2d 138 (N.J.1992).

In the *Oliver* case, the New Jersey Supreme Court held that the motor vehicle exclusion in an insurance policy did not operate to relieve the appellant insurance company of the duty of providing a defense with respect to the fifth count of the complaint that alleged social host liability for supplying alcoholic beverages to Oliver: "No one disputes that insurers are generally obligated to defend their insureds on social host claims. The critical question is whether the insurer can avoid that obligation because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constitutes an additional cause of the injury." *Id.*, 607 A.2d at 139. We do not agree with Lawrence's contention that the *Oliver* case supports her core argument.

[¶ 19] The second case is *Sarp v. U.S. Fidelity Guaranty Company*, 572 So.2d 158 (La.App. 1 Cir.1990), *cert. denied* 573 So.2d 1136 (La.1991). Much like the *Oliver* case summarized above, the result in the *Sarp* case turned on the insured having provided his minor son with alcoholic beverages. The Court of Appeal of Louisiana, First Circuit, reasoned:

The petition here alleges Lanier Juneau's negligence *in the serving* of alcohol and in permitting consumption of alcohol by minors in his home. This theory of negligence rests upon a statutory duty not to purchase alcohol for minors, ... and a civil duty, that can be inferred from this statute, to prohibit minors from *consuming* alcohol.... This duty encompasses risks beyond that of an automobile accident. We can foresee various means other than use of an automobile by which negligent conduct due to intoxication could have resulted in injury. The use of the automobile in this case, though an essential fact of *this* accident, was not an essential element of the *theory* of liability. [Italics in the original.]

*Sarp*, 572 So.2d at 160.

[¶ 20] We are not persuaded that the *Sarp* case supports Lawrence's argument either, because in the instant case use of the automobile was an essential element of the theory of liability.

## CONCLUSION

[¶ 21] We hold that the district court did not err in granting summary judgment in favor of State Farm. The order of the district court is affirmed.