CINCINNATI INSURANCE
COMPANY, Plaintiff,

v.

GRAND POINTE, LLC,
et al, Defendants.

RLI Insurance Company, Plaintiff,

v.

Grand Pointe, LLC, et al, Defendants.

Nos. 1:05–CV–161, 1:05–CV–157.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Aug. 10, 2007.

Amy F. Noland, John M. Neal, Neal Law Firm, Knoxville, TN, Cameron S. Hill, Baker, Donelson, Bearman, Caldwell & Berkowitz, Chattanooga, TN, David W. McDowell, Baker, Donelson, Bearman, Caldwell & Berkowitz, Birmingham, AL, for Plaintiffs.

Ronald J. Berke, Berke, Berke & Berke, Chattanooga, TN, for Defendants.

## MEMORANDUM

COLLIER, Chief Judge.

Previously, the Court granted Plaintiff RLI Insurance Company's ("RLI") motion

for summary judgment and declared it did not have a duty to defend or indemnify Defendants Grand Pointe, LLC; Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company; Century Construction of Tennessee, LLC, an Alabama Limited Liability Company; Southern Century, LLC; CEMC IV, L.P.; Clifford Byrd Harbour, III; and Robert H. Chandler (collectively "Defendants" or "Insureds") in connection with an Alabama lawsuit ("Underlying Lawsuit") (Court File Nos. 114 & 115).[1] In doing so, the Court resolved the principle dispute between the parties. However, some matters remained unresolved. Specifically, RLI states in its complaint it "is entitled to reimbursement for all costs, fees, and expenses incurred by it in defending the insureds [Defendants] in the Underlying Lawsuit" (1:05–CV–157, Court File No. 1 at 7). Pursuant to 28 U.S.C. § 636(b)(1), the Court referred this matter to United States Magistrate Judge Susan K. Lee ("magistrate judge") on August 17, 2006 for a report and recommendation concerning a determination of the reimbursement of fees and expenses (Court File No. 118).[2]

Thereafter, the magistrate judge entered a schedule for submission of dispositive motions (Court File No. 136). Subsequently, RLI filed a motion for summary judgment as to the issue of reimbursement of fees and expenses (1:05–CV–157, Court File No. 57) (1:06–CV–161, Court File No. 143). The magistrate judge issued a report and recommendation ("R & R") concerning this motion as well as two procedural motions[3] on June 12, 2007 (Court File No. 165). In the R & R the magistrate judge recommended the Court grant RLI's motion for summary judgment and award it $481,512.36, as well as prejudgment interest, as reimbursement for fees and expenses incurred in defending Defendants in the Underlying Lawsuit (id.). The magistrate judge also ordered that within five (5) days after the issuance of the R & R, RLI file a supplemental statement calculating the amount of prejudgment interest it seeks at a rate of five (5) percent simple interest per annum beginning on August 11, 2006, the date of the Court's order declaring RLI had no duty to defend or indemnify Defendants as a matter of law (id.). RLI filed the supplement within the required time period, on June 19, 2007 (Court File No. 166).

On June 26, 2007, Defendants timely filed objections to the R & R, as well as a supporting memorandum, arguing the magistrate judge erred in finding RLI is entitled to summary judgment on this issue and in recommending the Court award a judgment in RLI's favor (Court File Nos. 167 & 168). RLI filed a response to Defendants' objections (Court File No. 169). Subsequently, the magistrate judge filed a supplemental report and recommendation ("supplemental R & R"), which found RLI's calculation to be correct and recommended RLI be awarded prejudgment interest in the amount of $19,662.64 (Court File No. 170). Neither party filed objections to the supplemental R & R.

---

**1.** The Court subsequently denied Defendants' motion for reconsideration of its previous 1 rulings concerning this issue (Court File Nos. 162 & 164).

**2.** Case number 1:05–CV–157 and 1:05–CV–161 were previously consolidated (Court File No. 37). Therefore, unless otherwise indicated, all Court File references are to the lead case, 1:05–CV–161.

**3.** (1) RLI's motion to strike Defendants' second response in opposition to RLI's motion for summary judgment (Court File No. 159), and (2) Defendants' motion for leave to file the second response to RLI's motion for summary judgment (Court File No. 160).

## I. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R & R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court has already outlined the applicable facts at length in its previous memorandum opinions (Court File Nos. 105,114 & 162). Additionally, as neither party objects to the magistrate judge's factual findings, the Court will **ACCEPT** and **ADOPT** by reference the magistrate judge's statements of the procedural and factual background contained in her R & R (Court File No. 165 at 3–11).[4]

4. Despite Defendants' argument, the Court finds the magistrate judge's conclusion that *no genuine issues of material fact are in dispute* is supported by the weight of the evidence.

5. The magistrate judge cites a Texas Supreme Court case, *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128 (Tex.2000), in her explanation of the minority position. However, the Court notes the "Texas Supreme Court has since backed away from its statement [in *Matagorda County* ] that a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy . . . The court now recognizes that, in certain circumstances, unilateral conduct of the insurer can give rise to a right to reimbursement." *St. Paul Fire and Marine Ins. Co. v. Compaq Computer Corp.*, 377 F.Supp.2d 719, 724 (D.Minn.2005) (citing *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, No. 02–0730, 2005 WL 1252321 (Tex. May 27, 2005)) (internal citations and quotation marks omitted). Regardless, the case cited by the magistrate judge does reflect the minority position.

6. The Court finds the magistrate judge's reliance on the United States Court of Appeals for the Sixth Circuit's ("Sixth Circuit") opinion in *United Nat'l Ins. Co. v. SST Fitness*

## III. ANALYSIS

The Court finds the magistrate judge correctly stated the relevant issue in this matter: "May an insurer seek reimbursement from an insured for defense costs and settlement funds paid on behalf of the insured when it is subsequently determined the insurer owed no duty to defend or indemnify the insured, and the insurance policy does not expressly provide for a right of reimbursement?" (Court File No. 165 at 11). The magistrate judge thoroughly and exhaustively considered this issue of first impression under Tennessee law in her forty-two (42) page R & R. After an extensive analysis, including an explanation of both the majority and minority approaches,[5] the magistrate judge reasonably concluded Tennessee would follow the majority approach which allows reimbursement.[6] Therefore, the magis-

*Corp.*, 309 F.3d 914 (6th Cir.2002) reasonable and appropriate under the facts and circumstances of this case. Accordingly, Defendants' attempts to factually distinguish that case are without merit. Specifically, Defendants' reliance on *Am. Motorist Ins. Co., v. Custom Rubber Extrusions, Inc.*, No. 1:05cv2331, 2006 WL 2460861 (N.D.Ohio Aug.23, 2006) is misplaced. In that case, the Federal District Court for the Northern District of Ohio engaged in a very fact specific analysis and refused to extend the principles of *SST Fitness Corp.* to an insured's right to reimbursement of a final judgment, not a settlement payment. That Court's holding was premised upon the differences between "defenses costs" and a "final judgment." The Court thinks settlement payments belong in the first category and are therefore, unaffected by this decision. The Court finds the magistrate judge provided adequate legal support in the R & R for her conclusion that RLI is entitled to reimbursement of the settlement payment it made in the Underlying Lawsuit (Court File No. 165 at 28–31). Additionally, RLI cites another case which supports the magistrate judge's conclusion on this issue. *Travelers Prop. Casualty Co. of Am. v. Hillerich & Bradsby Co., Inc.*, No. 3:05CV–533–H, 2006 WL 2524145, *2 (W.D.Ky. Aug. 28, 2006) (finding Kentucky courts would likely adopt a rule which allows an insurer a right to reim-

trate judge recommended RLI be awarded a judgment against all Defendants, jointly and severally, for the costs and expenses RLI incurred in defending them when it, in fact, did not have a duty to defend.

 Defendants' specific written objections to the R & R include:[7] (1) Alabama law, which does not allow reimbursement, governs RLI's right to reimbursement, (2) the relevant issue should be certified to the Tennessee Supreme Court, (3) Tennessee would follow the minority approach regarding the relevant issue, (4) even if Tennessee were to apply the majority position, RLI would not be entitled to reimbursement of any fees paid after Defendants objected to RLI's claim for reimbursement, (5) even if Tennessee were to apply the majority position, RLI would not be entitled to reimbursement of settlement monies,[8] (6) Tennessee law does not support a finding of an implied-in-law contract,[9] (7) the policy language prevents RLI from unilaterally altering the policy,[10] (8) RLI is not entitled to a judgment against Defendant Robert Chandler since he is not a named insured under the policy, nor is he jointly and severally liable,[11] and (9) since the Court finds Tennessee law governs the

---

bursement of settlement payments since such a rule "encourages insurers to participate in settlement agreements and it places the financial and legal burden upon the insurer, not the insured, to pursue reimbursement").

**7.** The Court is required to perform a *de novo* review only as to specific written objections to the R & R. The Court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986) ("the parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider"). Accordingly, Defendants' attempt to incorporate their previous arguments and briefs into their specific written objections to the R & R must fail (Court File No. 168 at 3–4).

**8.** Defendants argue the facts do not support the magistrate judge's conclusion that RLI adequately reserved its right to seek reimbursement of settlement costs. Defendants cite *Allstate Ins. Co. v. Dixon*, No. 01–A–01–9011CH00421, 1991 WL 79549 (Tenn.Ct.App. May 17, 1991), which indicates a reservation of rights must fairly, adequately, and specifically inform the insured of the insurer's position, in support of this argument. Even though the magistrate judge does not cite this specific case, she cites other cases which stand for the same propositions in support of her conclusion on this issue. Therefore, the magistrate judge's conclusion that RLI provided adequate notice to Defendants of its claim for reimbursement of settlement payments is not erroneous.

**9.** Defendants continue to argue *SST Fitness Corp.* is factually distinguishable from this case because they objected to RLI's claim of reimbursement even though they accepted its payment of defense and indemnity costs. *SST Fitness Corp.*, 309 F.3d 914. Defendants specifically focus on the Sixth Circuit's statement in that case that the insured did not object to the insurer's reservation of rights. *Id.* at 920. The Sixth Circuit made this statement in connection with its finding that the insurer had met its burden of establishing an implied-in-fact contract between the parties since such a contract requires a "meeting of the minds" under Ohio law. *Id.* at 919–20 (predicting Ohio law). In contrast, the magistrate judge found an implied-in-law contract existed between the parties in this case based upon Defendants' acceptance of RLI's payment of defense and settlement costs over Defendants' objection to RLI's right to reimbursement (Court File No. 165 at 24–31). Such a finding does not require a "meeting of the minds" or mutual intent between the parties (*id.* at 22–23). Therefore, Defendants' attempt to distinguish *SST Fitness Corp.* fails.

**10.** The Court finds the magistrate judge correctly rejected this argument by, among other things, asserting reservation of rights letters are allowed under Tennessee law (Court File No. 165 at 21–22).

**11.** Defendants fail to provide legal support for their argument concerning this issue and simply contend "as a matter of public policy" Defendant Chandler should not be required to reimburse RLI (Court File No. 168). There is no dispute Defendant Chandler received and

issues in this case, Alabama law does not govern the issue of joint and several liability (Court File Nos. 167 & 168).[12] With the exception of the last objection, which is without merit, these are essentially the same arguments Defendants have made throughout the pendency of this matter (Court File Nos. 153 & 158). The magistrate judge comprehensively considered and adequately disposed of these objections in her R & R. After performing a *de novo* review, by carefully reviewing the record, the arguments of the parties, and the applicable law, the Court finds the magistrate judge's findings to be supported by the weight of the evidence and her legal analysis to be correct under the relevant law. Additionally, the Court finds the magistrate judge's findings of fact and legal analysis to be correct in her supplemental R & R, which dealt with the issue of prejudgment interest.[13] Accordingly, the Court **ADOPTS** the magistrate judge's R & R and supplemental R & R and fully incorporates both in this memorandum as the Court's opinion.

## IV. CONCLUSION

Therefore, for the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's findings of fact, conclusions of law, and recommendations contained in her R & R (Court File No. 165) and supplemental R & R (Court File No. 170) and will enter a **JUDGMENT ORDER** which:

(1) **GRANTS** RLI's motion for summary judgment (1:05–CV–161, Court File No. 143) (1:05–CV–157, Court File No. 57);

(2) **AWARDS** RLI $481,512.36 for fees, costs, expenses, and indemnity provided by RLI to Defendants in connection with the Underlying Lawsuit;

(3) **AWARDS** RLI pre-judgment interest in the amount of $19,662.64 (calculated at a rate of 5% per annum from August 11, 2006 to June 12, 2007);

(4) **ORDERS** all Defendants, as defined herein, are jointly and severally liable for these awards;

(5) **GRANTS** Defendants' motion for leave to file a second response brief (1:05–

---

accepted the defense RLI funded. Defendants focus on the fact that RLI specifically mentioned Defendant Clifford Harbour, but not Defendant Robert Chandler, in a letter it sent Defendants after settlement of the "glass claims." As both the magistrate judge and RLI correctly point out, this was only one of many communications exchanged between the parties concerning RLI's claim for reimbursement. Defendant Chandler was included in the initial reservation of rights letter as well as the complaint in this matter, in addition to the November 2005 correspondence which was exchanged between RLI and his attorneys (Court File No. 165 at 37–39) (Court File No. 169). Therefore, the weight of the evidence supports the conclusion that Defendant Chandler received notice of RLI's claim for reimbursement.

**12.** The last objection is the only one Defendants did not assert prior to the issuance of the R & R. The Court agrees with the finding

in the R & R that Tennessee law controls this declaratory judgment action under the "law of the case" doctrine (Court File No. 165 at 39). Additionally, the Court finds to the extent the magistrate judge relied on Alabama law concerning whether the individual Defendants should be jointly and severally liable for reimbursement was appropriate since, as evidenced by the complaint, the Underlying Lawsuit was brought in Alabama state court pursuant to Alabama state law (Court File No. 1, Attachment 4). The Court notes the magistrate judge provided other valid reasons for holding Defendant Chandler jointly and severally liable for reimbursement. Therefore, Defendant's last objection is without merit.

**13.** Defendants' failure to file any specific objections to the supplemental R & R within the required ten (10) day period can be deemed a waiver of an objection to that calculation. *See Slater v. Potter*, 28 Fed.Appx. 512, 513 (6th Cir.2002).

CV–161, Court File No. 160) (1:05–CV–157, Court File No. 74);

(6) **DENIES** as **MOOT** RLI's motion to strike Defendants' supplemental response (1:05–CV–161, Court File No. 159) (1:05–CV–157, Court File No. 73); [14] and

(7) **ORDERS** the Clerk to **CLOSE** Case number 1:05–CV–161 and Case number 1:05–CV157, as the accompanying Order resolves all remaining issues in this matter.[15]

An Order shall enter.

## JUDGMENT ORDER

Based on the reasons stated in the accompanying memorandum opinion, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's findings of fact, conclusions of law, and recommendations contained in her report and recommendation (Court File No. 165)[1] and supplemental report and recommendation (Court File No. 170) and enters this **JUDGMENT ORDER** which:

(1) **GRANTS** Plaintiff RLI Insurance Company's ("RLI") motion for summary judgment (1:05–CV–161, Court File No. 143) (1:05–CV–157, Court File No. 57);

(2) **AWARDS** RLI $481,512.36 for fees, costs, expenses, and indemnity provided by RLI to Defendants Grand Pointe, LLC; Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company; Century Construction of Tennessee, LLC, an Alabama Limited Liability Company; Southern Century, LLC; CEMC IV, L.P.; Clifford Byrd Harbour, III; and Robert H. Chandler's (collectively "Defendants") in connection with the Underlying Lawsuit;

(3) **AWARDS** RLI pre-judgment interest in the amount of $19,662.64 (calculated at a rate of 5% per annum from August 11, 2006 to June 12, 2007);

(4) **ORDERS** all Defendants, as defined herein, are jointly and severally liable for these awards;

(5) **GRANTS** Defendants' motion for leave to file a second response brief (1:05–CV–161, Court File No. 160) (1:05–CV–157, Court File No. 74);

(6) **DENIES** as **MOOT** RLI's motion to strike Defendants' supplemental response (1:05–CV–161, Court File No. 159) (1:05–CV–157, Court File No. 73); and

(7) **ORDERS** the Clerk to **CLOSE** Case number 1:05–CV–161 and Case number 1:05–CV157, as all issues have been resolved in both cases.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

LEE, United States Magistrate Judge.

### I. Introduction

Before the Court are: (1) the motion of Plaintiff, RLI Insurance Co. ("RLI"), for

---

14. In contradiction to the Local Rules, Defendants filed a supplemental response brief after RLI filed its reply brief without leave of the Court (Court File No. 158). RLI filed a motion to strike Defendants' supplemental response pursuant to E.D. TN. LR 7.1(d) (Court File No. 159). Subsequently, Defendants' filed a motion for leave to file a supplemental brief (Court File No. 160). The Court finds the magistrate judge correctly denied RLI's motion to strike and considered Defendants' supplemental brief in formulating her R & R in furtherance of judicial economy.

15. Even though the Plaintiffs are different, the facts and requested relief in these two cases is virtually identical; therefore, they were previously consolidated (Court File No. 37). All issues in case number 1:05–CV–161, in which Cincinnati Insurance Company is the Plaintiff, have been resolved by settlement and agreement of the parties (Court File No. 138). All issues in case number 1:05–CV–157, in which RLI is the Plaintiff, are resolved in the accompanying Judgment Order.

1. Unless otherwise indicated, all references are to Case number 1:05–CV–161.

reimbursement of fees and expenses paid in connection with providing a defense to Defendants, Grand Pointe, LLC; Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company; Century Construction of Tennessee, LLC, an Alabama Limited Liability Company; Clifford Byrd Harbour; Robert H. Chandler; Southern Century, LLC; and CEMC IV, L.P. (collectively the "Defendants" or "Insureds"), in connection with litigation in Alabama styled *Grand Pointe Condominium Owners Association, Inc. v. Grand Pointe, LLC, et. al.*, Case No. CV–2003–996 (the "Underlying Litigation") [Case No. 1:05–cv–161, Doc. No. 121], (2) the motion of RLI for summary judgment as to the issue of reimbursement of fees and expenses paid in providing a defense to Defendants [Doc. No. 57], (3) RLI's motion to strike Defendants' second response in opposition to RLI's motion for summary judgment [Doc. No. 73], and (4) Defendants' motion for leave to file the second response to RLI's motion for summary judgment [Doc. No. 74]. Issues concerning RLI's request for reimbursement have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) [Case No. 1:05–cv–161, Doc. No. 118].[1]

RLI seeks reimbursement in the amount of $481,512.36, plus prejudgment interest, from Defendants for defense costs and a settlement payment incurred by RLI in providing a defense to Defendants in the Underlying Litigation[2] [Doc. No. 57]. The reimbursement issues have been fully briefed by the parties, with Defendants filing a response in opposition to RLI's motion for summary judgment and an amendment thereto [Doc. No. 67, 68] and RLI filing a reply to Defendants' response [Doc. No. 70]. In addition, Defendants filed a response to RLI's reply [Doc. No. 72], which is the subject of RLI's motion to strike and Defendants' motion for leave to file a second response [Doc. Nos. 73 & 74].

After carefully considering the record and the parties' arguments, and for the reasons set forth herein, I **RECOMMEND:** (1) RLI's motion for a summary judgment [Doc. No. 57] be **GRANTED;** (2) RLI be **AWARDED** $481,512.36 for the fees, costs, expenses, and indemnity provided by RLI to Defendants in connection with the Underlying Litigation and that all Defendants be found jointly and severally liable to reimburse RLI; (3) RLI be **AWARDED** pre-judgment interest at a rate of 5% per annum calculated from August 11, 2006, the date of this Court's order granting summary judgment to RLI and declaring RLI had no duty to defend or indemnify Defendants as a matter of law; (4) Defendants' motion for leave to file a supplemental brief [Doc. No. 74] be **GRANTED;** and (5) RLI's motion to strike Defendants' supplemental response in opposition to RLI's motion for summary judgment [Doc. No. 73] be **DENIED as MOOT.** In addition, it is **ORDERED** that no later than five (5) days after the issu-

---

**1.** This action was consolidated with a companion action, *Cincinnati Insurance Company v. Grand Point, LLC, et al*, Case No. 1:05–cv–161, on January 25, 2006 [Case No. 1:05–cv–161, Doc. No. 37]. On December 20, 2006, Cincinnati Insurance Company ("CIC") and the Defendants settled all claims in Case No. 1:05–cv–161, including claims for reimbursement [Case No. 1:05–cv–161, Doc. No. 138]. References to the docket in the consolidated cases will cite "Case No. 1:05–cv–161." By stipulation of the parties, Grand Pointe Condominium Owners Association was dismissed from these proceedings as reimbursement was not sought from it [Case No. 1:05–cv–161, Doc. No. 150].

**2.** RLI's filing of a separate motion for reimbursement of fees and expenses paid in connection with providing a defense to Defendants in the Underlying Litigation [Case No. 1:05–cv161, Doc. No. 121] appears to be redundant, and need not be separately addressed herein.

ance of this report and recommendation, RLI shall file a supplemental statement calculating the amount of prejudgment interest it seeks from Defendants at a rate of 5% simple interest per annum beginning on August 11, 2006.

## II. Background

### A. Procedural Background

On August 11, 2006, the Court granted summary judgment in favor of RLI declaring RLI had no duty to defend or indemnify Defendants in the Underlying Litigation [Case No. 1:05–cv–161, Doc. Nos. 115 & 114]. On May 30, 2007, the Court denied Defendants' motion to reconsider, alter, amend or vacate its memorandum order and opinion granting summary judgment in favor of RLI [Case No. 1:05–cv–161, Doc. No. 164].

As noted, the Court referred RLI's claim for reimbursement for a report and recommendation [Case No. 1:05–cv–161, Doc. No. 118]. Pursuant to that referral, the parties were ordered to conduct all necessary discovery concerning the claim for reimbursement, to file appropriate pleadings, and to be prepared for an evidentiary hearing if necessary [Case No. 1:05–cv–161, Doc. No. 120]. The parties were also ordered to specifically address in their pleadings whether RLI timely reserved any right to reimbursement under applicable state law, the amount of reimbursement sought, and any other facts and conclusions necessary to a resolution of all referred reimbursement issues [id.]. Several motions and proceedings later, the evidentiary hearing was cancelled and a schedule for submission of dispositive motions was ordered [Case No. 1:05–cv–161, Doc. No. 136].

In accordance with the Court's order, RLI timely filed a motion seeking summary judgment with respect to the reimbursement matters [Doc. No. 57]. In support of its motion, RLI relies upon the

pleadings, Defendants' responses and amended responses to RLI's requests for admissions and the affidavit of Amy Johnson ("Johnson"), the "Director, Property & Casualty Claims at RLI" [id.]. Defendants timely filed a response in opposition relying upon the pleadings, the affidavit of Clifford Byrd Harbour, III ("Harbour"), and RLI's responses to Defendants' requests for admissions [Case No. 1:05–cv–161, Doc. No. 76]. The parties have not contended material disputed facts prevent resolution of the reimbursement issues as a matter of law.

### B. Factual Background

The Court has already outlined the applicable facts pertaining to its declaration that RLI has no duty to indemnify or defend Defendants in the Underlying Litigation [Case No. 1:05–cv–161, Doc. Nos. 114 & 162], and such facts will not be repeated herein. As pertinent to the referred matters, the parties essentially agree on the following time line of events and communications, but disagree as to the legal ramifications of such events and communications:

| | |
|---|---|
| March 28–April 1, 2005: | RLI signs handwritten note agreeing to undertake defense obligations upon exhaustion of underlying carrier's policy limits [Case No. 1:05–CV–161, Doc. No. 76–2 at 5]. |
| May 23, 2005: | The underlying carrier exhausts its policy limits [Doc. No. 57–9 at 3]. |
| May 24, 2005: | RLI files this declaratory judgment action [Doc. No. 1]. |
| May 26, 2005: | RLI sends a letter to Defendants reserving the right to seek reimbursement of defense costs, fees and expenses incurred in connection with the Underlying Litigation [Doc. No. 57–9 at 16–23]. |
| November 7, 2005: | RLI sends a letter reserving the right to recoup any monies paid in settlement of the claims in the Underlying Litigation [id. at 26]. |
| November 8, 2005: | Defendants send a letter rejecting the position taken by RLI in its November 7, 2005 letter [id. at 28]. |
| November 11, 2005: | RLI sends a letter to the Defendants reasserting its position [id. at 30–31]. |
| November 17, 2005: | Defendants again reject RLI's position [Doc. No. 72–2]. |
| March 7, 2006: | RLI pays $225,000.00 to settle certain "glass claims" in the Underly- |

ing Litigation [see Doc. No. 57–9 at 7].

| | |
|---|---|
| April 13, 2006: | RLI sends a letter reasserting its position on reimbursement for defense and settlement costs from Defendants [*id.* at 33]. |
| April 19, 2006: | Defendants send a letter rejecting RLI's position [Doc. No. 67–6]. |
| June 29, 2006: | This Court determines CIC has no duty to indemnify or defend the Defendants in the Underlying Litigation as a matter of law [Case No. 1:05–CV–161, Doc. Nos. 105, 106]. |
| July 27, 2006: | RLI sends a letter concerning mediation and settlement issues, reminding Defendants it would seek reimbursement [Doc. No. 53–2 at 30–31]. |
| August 11, 2006: | This Court determines RLI has no duty to indemnify or defend the Defendants in the Underlying Litigation as a matter of law [Case No. 1:05–CV–161, Doc. Nos. 115, 116]. |
| December 20, 2006: | Summary judgement granted to certain individual Defendants in the Underlying Litigation [Doc. No. 67 at 17]. |
| | \* \* \* |
| 2005 to 2006: | RLI pays in connection with the Underlying Litigation expert witnesses fees of $63,811.06, court reporter fees of $6,802.73, attorney fees of $185,320.91, outside copy expenses of $175.48, mediator fees of $402.18 and indemnity of $225,000.00 [Doc. No. 57–9 at 6–9 and exhibits]. |

The parties emphasized various events, communications, admissions, and Policy provisions in their respective filings concerning reimbursement as summarized below.

## 1. Johnson's Affidavit

Johnson's affidavit states RLI issued a commercial umbrella policy, Policy No. ERU0002610 to Grand Pointe, LLC, Century Construction of Tennessee, LLC, a Tennessee Limited Liability Company, Century Construction of Tennessee, LLC, an Alabama Limited Liability Company, Clifford Byrd Harbour, III, Southern Century, LLC, and CEMC IV, L.P. for the policy period from January 29, 2001 to January 29, 2002 ("the Policy") [Doc. No. 57–9 at ¶ 3]. The Insureds sought a defense and indemnity from RLI pursuant to the Policy [*id.* at ¶ 5].

The Policy was excess to the primary or underlying coverage provided by Steadfast Insurance Company [*id.* at ¶ 4]. On or about May 23, 2005, Steadfast Insurance Company exhausted the limits of its policy, and RLI agreed to provide a defense to its Insureds in the Underlying Litigation "under a reservation of rights." [*id.* at ¶ 6].

The Insureds requested "that the defense of the Underlying Litigation be handled by Armbrecht Jackson, LLP, a law firm located in Mobile, Alabama, and Blackburn & Conner, P.C., a law firm based in Bay Minette, Alabama." [*Id.* at ¶ 7]. RLI and the Insureds "also agreed that assistance in the Underlying Litigation would be provided by the law firm of White & Williams, LLP, ... in Philadelphia, Pennsylvania, because of its involvement in the defense of virtually identical litigation involving these same Insureds on several other building projects." [*Id.*].

On May 26, 2005, RLI sent a letter "to the Insureds advising them that RLI was undertaking a reservation-of-rights defense." [*Id.* at 4, ¶ 9]. In the letter, RLI advised the Insureds that RLI reserved the right to seek reimbursement for fees and costs incurred by RLI if it was determined the claims in the Underlying Litigation were not covered by the Policy [*id.* at ¶ 9], stating:

> The handling of this matter is undertaken by RLI Insurance Company under a complete and strict reservation of rights under the subject policy. Any action or inaction by RLI should not be construed as, and is in no way, a waiver of any rights or defenses available to the company under the provisions of the policy, or under the laws of the State of Tennessee. We reserve our right to rely on facts, either presently known or unknown by RLI, to amend our reservation of rights as to this claim.
>
> Furthermore, it should be distinctly understood that no action or inaction on the part of RLI should be construed as a waiver of RLI's right to disclaim liability

in the event it comes to light that RLI has provided a defense for matters excluded from coverage under the policy. RLI reserves the right to deny the claim, to discontinue payment of outside counsel, and to seek reimbursement from you for counsel fees and costs incurred by RLI if it is determined the subject claims are not within policy coverage.

[*Id.* at 23].

RLI reminded the Insureds of its position on reimbursement on "several occasions," including in a November 7, 2005 letter [*id.* at ¶ 10]. On November 8, 2005, the Insureds sent a letter to RLI advising they disagreed with RLI's position on reimbursement [*id.* at ¶ 11 ], stating in pertinent part:

This letter will confirm our telephone conversation this afternoon concerning your letter of November 7, 2005, which was faxed to me today concerning your reservation of rights and the contention that your reservation includes the right to seek reimbursement for any part of the settlement you pay as well as any costs associated with the Alabama litigation referenced above.

As I related to you ... we reject your position entirely.

[*Id.* at 28].

On November 11, 2005, RLI responded with a letter, which provided the Insureds with the citation to *United National Insurance Company v. SST Fitness Corporation*, 309 F.3d 914 (6th Cir.2002), and stated in pertinent part:

RLI has provided its insureds with a defense under a reservation of rights for approximately six months now, and its insureds have benefited from that defense. By accepting a defense from RLI under these circumstances, an implied contractual right exists for RLI to seek reimbursement. In fairness, if there is a judicial determination that no

duty to defend ever existed then the insureds ought to make RLI whole by reimbursing it.

[*Id.* at 30–31]. On April 13, 2006, a letter was sent to "remind[ ] the Insureds that 'Mr. Harbour or his businesses may bear the ultimate financial responsibility for settlement, for ongoing defense costs and for any verdict that may result.'" [*Id.* at ¶ 13].

Johnson's affidavit also summarizes the payments made by RLI in the course of defending the Underlying Litigation for which it now seeks reimbursement in the amount of $481,512.36 [*id.* at ¶¶ 14–15]. In addition, invoices and checks documenting the payments made with regard to the Underlying Litigation are referenced in and attached to Johnson's affidavit [*id.* at ¶¶ 16–33].

### 2. Harbour's Affidavit

In their response in opposition to RLI's motion for summary judgment, Defendants state that during a mediation involving other lawsuits held from March 28–April 1, 2005, RLI entered into a handwritten agreement to undertake a defense of the Underlying Litigation [Doc. No. 67 at 3]. A copy of the handwritten document is attached to the affidavit of Harbour [Case No. 1:05–cv–161, Doc. No. 76–2]. The handwritten document states that, upon certain conditions not contested here, RLI:

will undertake the defense obligations heretofore assumed by [the underlying carrier] under a strict reservation of rights in accordance with their respective policies and with regard to their respective policy period as to the remaining individual claims and/or Grand Pointe claim(s).

[*Id.* at 5]. The handwritten document states it is approved by "David W. McDowell, counsel for RLI" [*id.*].

### 3. RLI's Admissions

In addition, Defendants contend RLI has made certain admissions about the handwritten document [Doc. No. 67–2]. Defendants' Request for Admission No. 14 states:

Admit that the handwritten memorandum does not mention any right of RLI to seek any type of reimbursement from these Defendants (See attached Exhibit 2).

[Doc. No. 67–2 at 4]. RLI responded:

Admitted, but RLI notes that the document speaks for itself. Exhibit 2 is a handwritten note prepared at the request of the insureds' attorney at a mediation involving several other claims pending against the insured, at which it was contemplated that Steadfast/Zurich might exhaust its aggregate limit. At that time, the provision of a defense by RLI was simply a contingent possibility. Nevertheless, RLI notified the insureds that it would be willing to undertake the defense under a strict reservation-of-rights. Once Steadfast exhausted its limits, RLI promptly sent a letter ... providing an explicit specification of the rights it was reserving.

[*Id.*].

Defendants' Request for Admission No. 11 states:

Admit that there is no provision in Policy No. ERU0002610 which expressly or impliedly allows for RLI to claim reimbursement from its insureds for attorneys fees, costs and settlements contributions.

[*Id.* at 3]. In response, RLI "admit[ted] that there is *no express provision* ..." [*id.*]. Thus, it appears the parties agree there is no express provision in the Policy providing for reimbursement.

### 4. Defendants' Admissions

In their responses to RLI's second requests for admissions, numbers 140, 141 and 142, Defendants admitted that the hourly rates charged by: (1) Armbrecht Jackson, LLP; (2) Blackburn & Conner, P.C. and (3) White & Williams, LLP "in the underlying litigation were reasonable given the nature of the litigation and the fees customarily charged in Alabama for the defense of similar lawsuits." [Doc. No. 57–8 at 3–4].

### 5. The Policy

A copy of the Policy appears in the record [Doc. No. 1–3], and states it was issued to:

Century Construction of Tennessee, LLC, *et al.*

7530 Goodwin Road

Chattanooga, TN 37421

[*id.* at 2]. The policy has a supplementary schedule which lists the named insureds as: Century Construction of Tennessee, LLC; Southern Century, LLC; C.B. Harbour, III; Chip Harbour IV, Mylinda Harbour; CEMC, II, III, IV, V, VI; Tradewinds, LLC; Royal Palm, LLC; Enclave, LLC; Grand Pointe, LLC; CBII Properties, LLC; Regency Isles, Island Royale, LLC; CEBS, LLC, Elizabeth McBryar and Brad McBryar [*id.* at 29]. Chandler is not listed as a named insured [*id.*].

Section III. A.4 of the Policy gives RLI the "sole right to make any settlement of any suit" against the Insureds [*id.* at 5]. With regard to settlement of claims or suits, Section VII. N of the Policy provides:

We may pay, but we are not obligated to pay, any part or all of the amount of the retained limit to effect settlement of, or to defend or pay for the defense of, any claim or suit. Upon notification of the action taken, you shall promptly reimburse us for such part of the retained limit that we had paid. All Named Insureds are jointly and severally responsible for our reimbursement within thir-

ty (30) days after we give the insured written notice or demand for payment. [*Id.* at 16]. The declarations page of the Policy, item 4, sets the retained limit at $10,000 [*id.* at 2].

The Policy further states with regard to the "Defense of Claims or Suits" that:

Except for the retained limit, we will also pay for, investigate and defend any suit brought against an insured for a claim or suit that alleges damages arising out of an occurrence which is not covered, in whole or in part, under scheduled underlying insurance and unscheduled underlying insurance, but which seeks damages arising out of an occurrence otherwise covered under this policy.

[*Id.* at 5].

With respect to persons insured, the Policy states:

Each of the following is an insured under this policy to the extent set forth below: ...

If the insured is designated in the Declarations as a limited liability company, the limited liability company so designated and any members thereof, but only with respect to the insured's liability as such. Your managers are also insureds, but only with respect to their duties as your managers.

[*Id.* at 5–6].

### III. *RLI's Motion for a Summary Judgment*

The parties essentially agree the Tennessee appellate courts have not directly addressed the following question: "May an insurer seek reimbursement from an insured for defense costs and settlement funds paid on behalf of the insured when it is subsequently determined the insurer owed no duty to defend or indemnify the insured, and the insurance policy does not expressly provide for a right of reimbursement?". RLI argues this Court should follow the majority position, which permits reimbursement. Defendants argue this Court should follow the minority position, which prohibits reimbursement. Defendants also request certification of this question to the Supreme Court of Tennessee.

RLI asserts it could have denied the claim for defense and indemnification, forcing Defendants to make alternative arrangements to fund their defense of the Underlying Litigation [Doc. No. 58 at 2]. RLI argues it instead undertook "a reservation-of-rights defense, specifically reserving the right to be reimbursed if the coverage issues were resolved in its favor." [*Id.*]. RLI asserts it agreed to fund the settlement of certain issues only after "warning the Insureds that its doing so was subject to its right to be reimbursed." [*Id.*]. RLI asserts Defendants should be ordered to reimburse RLI $481,512.36, plus prejudgment interest, as a matter of law [*id.*].

In response, Defendants first assert RLI has no right to recoup defense costs and settlement payments because the Policy does not provide a broad right to reimbursement. Second, in the event the Court determines RLI is entitled to reimbursement, Defendants assert RLI's right to recover sums paid in settlement is limited to $10,000.00, which is the retained limit under the Policy [Doc. No. 67 at 7–10]. Third, and also in the event the Court determines RLI is entitled to reimbursement, Defendants contend not all Defendants should be held jointly and severally liable for reimbursement [*id.* at 17]. Finally, Defendants contend Alabama law, which they argue would not permit reimbursement, should be applied to RLI's reservation of rights [*id.* at 19–21].

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact

exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir.2000).

## B. RLI's Right to Reimbursement Under Tennessee law

There is a conflict among the jurisdictions concerning whether reimbursement of defense costs is allowed when the insurance policy does not specifically reserve the right to reimbursement, as is the case here. The majority position permits an insurer to seek reimbursement for defense costs when it is determined the insurer has no duty to defend or indemnify, the policy does not contain an express provision regarding reimbursement, and the insurer timely reserves its right to reimbursement in a specific and adequate notice. *See, e.g., United Nat'l Ins. Co. v. SST Fitness Corp.,* 309 F.3d 914, 916 (6th Cir.2002) (predicting Ohio law). The minority position limits an insurer's right to reimbursement to those situations where there is an express provision in the policy providing for reimbursement. *See, e.g., General Agents Ins. Co. of Am. Inc. v. Midwest Sporting Goods, Co.,* 215 Ill.2d 146, 293 Ill.Dec. 594, 828 N.E.2d 1092, 1094 (2005). The parties agree there is no Tennessee case law directly addressing whether Tennessee would follow the majority or minority position.

## 1. The Majority Position

RLI asserts this Court should predict Tennessee courts would follow the majority position and determine RLI is entitled to reimbursement as a matter of law. RLI relies heavily upon *SST Fitness Corp.* in which the insurer, United National, agreed to provide a defense and indemnity to the insured, SST Fitness, in a patent and trademark infringement action. 309 F.3d at 916. Prior to providing a defense, United National sent a letter to SST Fitness reserving its right to reimbursement on the ground it had no duty to defend or indemnify SST Fitness in the underlying infringement action pursuant to the liability policy. *Id.* SST Fitness accepted United National's payment of defense costs and, thereafter, United National obtained a declaratory judgment it had no duty to defend or indemnify SST Fitness with regard to the underlying infringement action. *Id.*

United National subsequently brought an action to recoup its defense costs asserting that, when SST Fitness accepted its payment of defense costs in the underlying action after it explicitly reserved its right to reimbursement, an implied contract for reimbursement of the defense costs arose between the parties under Ohio law. *Id.* Because Ohio law governed the issue and the Ohio Supreme Court had not determined the issue, the Sixth Circuit stated it would "examine decisions and rationales from other jurisdictions that have decided the specific issue, general Ohio law and policy considerations" as a guide to predict how the Ohio Supreme Court would decide the issue. *Id.* at 917. The Sixth Circuit held:

> Courts in other jurisdictions thus consistently have held that an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims where

the insurer: 1) timely and explicitly reserves its right to recoup the costs; and 2) provides specific and adequate notice of the possibility of reimbursement. The general rule thus appears to be that, if these conditions are met, a reservation of rights is enforceable even absent an express agreement by the insured.

*Id.* at 919.

United National contended that allowing an insurer to recover its defense costs when it was subsequently found not to have had a duty to defend would further the policy of ensuring insurers would provide a defense to the insured "even in questionable cases." *Id.* at 921. The Sixth Circuit accepted this argument stating:

> We agree that allowing an insurer to recover under an implied in fact contract theory so long as the insurer timely and explicitly reserved its right to recoup the costs and provided specific and adequate notice of the possibility of reimbursement promotes the policy of ensuring defenses are afforded even in questionable cases. When an insurer conditions payment of defense costs on the condition of reimbursement if the insurer had no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment. When faced with a reservation of rights, the insured can choose to: 1) decline the offer, pay for the defense, and seek to recover on the policy; 2) decline the offer and file a declaratory judgment action; or 3) accept the offer subject to the reservation of rights.

*Id.*

In *Colony Ins. Co. v. G & E Tires & Service, Inc.*, 777 So.2d 1034, 1035 (Fla. Dist.Ct.App.2000), the insurer appealed a Florida circuit court order denying its claim for reimbursement for expenses incurred in defending its insured in a lawsuit. The insurer agreed to defend its insured only after it explicitly reserved it its right to reimbursement and informed the insured it would be bringing a declaratory judgment action against the insured to resolve the issue of its duty to defend. *Id.* at 1036–37. On appeal, the lower court's order denying the insurer's claim for reimbursement was reversed. The Florida appellate court noted there were no reported decisions from the courts of Florida on the issue of whether an insurer should be reimbursed for costs and attorney's fees in defending a claim for which there was no duty to defend. *Id.* After reviewing decisions from other jurisdictions, the court held:

> These authorities persuade us that Colony is entitled to reimbursement . . . Colony's reservation of rights and appointment of mutually agreeable counsel makes any claim that G & E detrimentally relied on the defense it received at Colony's expense untenable. G & E is no worse off than if it had itself retained the lawyer whom Colony and G & E agreed should handle its defense. In that event, too, G & E would have been responsible for the lawyer's bills. Colony timely and expressly reserved the right to seek reimbursement of the costs of defending clearly uncovered claims . . . Having accepted Colony's offer of a defense with a reservation of the right to seek reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed.
>
> A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered. Like cases similarly decided outside Florida, the present case involves a commercial insurance policy, two apparently sophisticated parties, and defense costs wholly and unquestionably attributable to clearly uncovered claims. G & E's

acceptance of the defense Colony offered to finance manifested acceptance of the terms on which Colony's offer to pay for the defense was tendered ... Colony is entitled to reimbursement.

*Id.* at 1039 (internal citations omitted).

This issue was also addressed by the Supreme Court of the Territory of Guam in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Guam Housing and Urban Renewal Authority,* No. CVA02–012, CV 1849–01, 2003 WL 22497996 (Guam Terr. Nov.4, 2003). In National Union, the insurer defended the Guam Housing and Urban Renewal Authority under a liability insurance policy. *Id.* at * 1. National Union paid the costs of the defense subject to a reservation of its right to seek reimbursement. *Id.* At the conclusion of the litigation, National Union sought reimbursement and the court found a number of the claims for which National Union had provided a defense were not covered under the policy. The court therefore found National Union could seek reimbursement for the non-covered claims provided it was able to produce evidence allocating the costs of the defense between the covered and non-covered claims. *Id.* With regard to National Union's right to reimbursement for the non-covered claims pursuant to its reservation of rights, the court held:

> Under an insurance contract, the insured only bargains for payment for defense costs for claims which, viewing the facts of the complaint, are potentially covered under the policy. Because the insured does not bargain for a defense for claims which are not potentially covered, there is no duty under the policy to pay those defense costs, and the insured cannot expect the payment of a defense in such circumstances. Logically, then the insured must reimburse the insurer for costs expended defending claims which are not potentially covered. To hold otherwise would provide a windfall to the insured.

*Id.* at * 16 (internal citations omitted). The court held if the insurer had no duty to defend, it may seek the reimbursement of its defense costs so long as it sufficiently reserved its right to seek reimbursement using a timely and explicit reservation of rights which provided specific and adequate notice reimbursement would be sought. *Id.* (citing *United Nat'l,* 309 F.3d at 919). *See also Nobel Ins. Co. v. Austin Powder Co.,* 256 F.Supp.2d 937, 940 (W.D.Ark.2003) (a reservation of rights letter is strictly construed and intent to seek reimbursement for defense costs must be stated in clear and unambiguous language; a general reservation of the right to contest coverage is insufficient).

This issue was also addressed by the Court in *Buss v. Superior Court,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 376–377, 939 P.2d 766, 776–777 (1997), where the court held an insurer could seek reimbursement for claims which were not covered pursuant to the policy it issued to the insured. The court stated since the insurer did not bargain with its insured to cover the defense costs for claims not covered by the policy, shifting the defense costs would alter the bargain between the insurer and its insured. *Id.* (citing *Ins. Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1224–25 (6th Cir.1980), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981)). Consequently, the court held the insurer had a quasi-contractual right to reimbursement for defense costs not covered by the policy because the insured had been unjustly enriched "by the insurer through the insurer's bearing of unbargained-for defense costs...." *Id.* at 377, 939 P.2d at 777.

## 2. The Minority Position

Defendants assert this Court should predict that Tennessee courts would follow the minority position and determine RLI is not entitled to reimbursement as a mat-

ter of law. The minority position was accepted in *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 293 Ill.Dec. 594, 596–97, 828 N.E.2d 1092, 1094–95 (2005). In *General Agents Ins.*, the insurer provided a defense to the insureds in an underlying lawsuit pursuant to a full reservation of rights. After the insurer brought a declaratory judgment action it was determined the insurer had no duty to defend the insureds in the underlying action. *Id.* The trial court held the insurer had adequately reserved its right to recoup defense costs and ordered reimbursement. *Id.* The insureds appealed, and the Supreme Court of Illinois reversed the trial court, holding:

> we acknowledge that a majority of jurisdictions have held that an insurer is entitled to reimbursement of defense costs when (1) the insurer did not have a duty to defend, (2) the insurer timely and expressly reserved its right to recoup defense costs, and (3) the insured either remains silent in the face of the reservation of rights or accepts the insurer's payment of defense costs. We chose, however, to follow the minority rule and refuse to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties.

*Id.* at 606, 828 N.E.2d at 1104. The court further held:

> As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract through a reservation of right, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend. We recognize that courts have found an implied agreement where the insured accepts the insurer's payment of defense costs despite the insurer's reservation of a right to reimbursement of defense costs. However, ... recognizing such an implied agreement effectively places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to defense from the insurer.

*Id.* at 604, 828 N.E.2d at 1102.[3]

In *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 511–12 (Wyo. 2000), the following question was certified to the Wyoming Supreme Court:

> Does Wyoming law recognize a legal or equitable right of insurer allocation, allowing the insurer to allocate to its insured and recover either (1) the costs of defending non-covered claims, where there is at least one covered claim and

**3.** In its decision, the Illinois Supreme Court cites two decisions, *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219–20 (3rd Cir. 1989) (applying Pennsylvania law) and *First Ins. Co. of Hawaii, Inc. v. State of Hawaii*, 66 Haw. 413, 665 P.2d 648, 654 (1983), as decisions from jurisdictions which follow the minority position on reimbursement. *General Agents Ins. Co.*, 293 Ill.Dec. at 604–05, 828 N.E.2d at 1102–03. In *Terra Nova*, the Third Circuit stated in dicta that it "believed" the Pennsylvania Supreme Court would not permit an insurer who provides a defense under a reservation of rights to recover the cost of such defense from its insured when it is later determined there is no coverage under the policy because the court had been unable to

find any Pennsylvania authority permitting such coverage. *Id.* at 1219–20. However, the issue presented in *Terra Nova* was not the issue of the insurer's right to reimbursement from its insured where it had provided a defense but it was later determined there was no duty to defend. The issue in *Terra Nova* was whether the district court's orders were final and appealable orders under 28 U.S.C. § 1291. *Id.* at 1218. Similarly, in *First Ins. Co.*, 665 P.2d at 650–51, the Supreme Court of Hawaii did not address the issue of an insurer's right to reimbursement because it concluded the lower court erred in finding the insurer did not have a duty to defend under the policy.

the insurer has already paid for the defense, or (2) the costs of bringing a counterclaim, where there is at least one covered claim and the insurer has already paid for the litigation of the counterclaim?

The Wyoming Supreme Court answered the first question "No" and the second question "Yes." *Id.* at 517. In answering the first question "No," the court stated it would look solely to the four corners of the policy to determine coverage issues and would not consider extrinsic evidence unless the policy was ambiguous. *Id.* at 516. The court further stated "[t]he [p]olicy issued to Shoshone by Pacific states a duty to defend, and allocation is not mentioned. In light of the failure of the policy language to provide for allocation, we will not permit the contract to be amended or altered by a reservation of rights letter." *Id.* The court summarized its holding, stating:

> unless a policy between an insured and an insurer provides for allocation of defense costs in the instance in which some claims are covered and some are not, Wyoming will not allow allocation of defense costs from the insurer to the insured. Because the insurer must defend the entire action, permitting allocation with respect to the representation on every claim in the action would lead to judicial inefficiency and a failure to resolve actions timely and consistently. With respect to the costs of prosecuting a counterclaim, unless the policy specifically provides coverage for those expenses, we will not amend the contract. Because there was no coverage for prosecuting the counterclaim ... Pacific is

not required to assume the expense of Shoshone's counterclaims and it must be allowed to allocate and recover those costs.

*Id.* at 517.[4]

Finally, in *Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County*, 52 S.W.3d 128, 129 (Tex.2000), the plaintiff sought reimbursement from the defendant for an amount paid to settle a claim which was later determined to be excluded from coverage. When the underlying action was brought against the defendant, the plaintiff denied coverage, but filed a declaratory judgment action and agreed to pay defense costs subject to a reservation of rights. *Id.* Almost two years later, the defendants in the underlying action offered to settle the suit for an amount within the policy limits and the plaintiff paid the settlement subject to a second reservation of rights letter, reserving its right to deny coverage and seek reimbursement of the settlement funds. *Id.*

■ The Texas Supreme Court held the plaintiff could not seek reimbursement of the settlement funds. *Id.* at 136. The court first noted the insurance policy did not provide for reimbursement of the settlement funds and that defendants did not expressly agree to reimburse the plaintiff. *Id.* at 131. The court held it would not create rights not set forth in the insurance policy under a universal reservation of rights letter. *Id.* The court noted the policy gave the plaintiff the right to settle an action without the defendant's consent and it would have been a simple matter for

---

4. Although Wyoming apparently follows the minority position, at least with respect to the allocation of defense costs between covered and non-covered claims, the decision in *Shoshone* is distinguishable from the instant situation. In *Shoshone*, the issue was the allocation of the right to reimbursement between covered and non-covered claims. *Shoshone*, 2 P.3d at 511–12. In this matter, the Court has found RLI had no duty to defend the claims in the Underlying Litigation. Hence, the somewhat more thorny issue of allocation of costs between claims is not presented.

the plaintiff to state in the policy it was entitled to seek reimbursement for settlement funds if it were later determined there was no coverage under the policy. *Id.* The court also held it would not recognize an equitable right to reimbursement in the situation before it. *Id.* at 134–35. Rather, the court held, "when coverage is disputed and the insurer is presented with a reasonable settlement demand within policy limits, the insurer may fund the settlement and seek reimbursement only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement." *Id.* at 135.[5]

### 3. Tennessee Case Law
#### a. Reservation of Rights

While not in the exact context presented here, Tennessee courts have upheld an insurer's use of a reservation of rights. For example, in *Richards Mfg. Co. v. Great American Ins. Co.*, 773 S.W.2d 916, 918 (Tenn.Ct.App.1988), the Court of Appeals of Tennessee held:

> In regard to affording a defense while reserving the right to litigate coverage under a liability policy, the general law is that an insurer, questioning its liability under the policy but willing to afford the insured a defense in the tort litigation, in order to preserve the right to later litigate coverage, must advise the insured that it will represent the insured, but that it intends to reserve the right to litigate the issue of policy coverage of the insured should there be an adverse judgment in the tort action.

There is also Sixth Circuit precedent concerning the application of a reservation of rights under Tennessee law. In *Transamerica Ins. Group v. Beem*, 652 F.2d 663, 664 (6th Cir.1981), an insurer brought a declaratory judgment action, to which Tennessee law applied, seeking to avoid its duty to defend under a homeowner's policy based upon the homeowner's failure to give timely notice of the claim as required by the provisions of the policy. On appeal from the district court's grant of summary judgment in favor of the insurer, the Sixth Circuit noted there was no Tennessee case law on the issue presented, but there was ample authority from other jurisdictions. The Sixth Circuit found the courts of Tennessee would follow the well-reasoned precedent on the issue, which the Sixth Circuit described as follows:

> If the insurer gives proper notice that it is reserving its rights, in spite of investigating the claim or defending any action which may arise from it, such investigation or defense will not waive its right to rely on the breach of condition. This notice is usually accomplished by a reservation of rights letter or a non-waiver agreement. However, the reservation of rights or non-waiver notice given by the insurance company "will be held sufficient only if it fairly informs the insured of the insurer's position." Also, it is the law of Tennessee, as elsewhere, that documents prepared by the insurance company, which is in a better position than the insured to understand these

---

**5.** Under Texas law, an insurer faced with a coverage dispute must either accept coverage or make a good faith effort to determine coverage before it resolves the underlying dispute. *Matagorda County*, 52 S.W.3d at 135 (citing *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996)). The court in *Matagorda County* noted nearly two years elapsed between the time the plaintiff filed its declaratory judgment action and the date it settled the suit and that the plaintiff apparently made no effort to resolve the coverage dispute during that two year period. *Id.* at 135 n. 6. Unlike the situation in *Matagorda County*, there is no indication of a delay on the part of RLI in trying to resolve the coverage dispute between itself and the Defendants.

matters, will be strictly construed against the company.

*Id.* at 666.

In *General Agents Ins. Co., Inc. v. Mandrill Corp., Inc.,* No. 1:02–cv–350, 2006 WL 686880 (E.D.Tenn. Mar.16, 2006) (Collier, J.), this Court also addressed an insurer's reservation of rights. The Court noted that for a reservation of rights to be effective under Tennessee law, such reservation "must fairly and adequately inform the insured of the insurer's position." *Id.* at *8 (quoting *Allstate Ins. Co. v. Dixon,* No. 01–A–01–9011 CH00421, 1991 WL 79549, *4 (Tenn.Ct.App. May 17, 1991)). This Court held Tennessee law requires "a reservation of rights to specifically address what rights are being reserved and in what circumstances." *Id.*

### b. Implied Contracts

■■■ Contracts implied in fact and contracts implied in law are recognized under Tennessee law. *Freeman Indus., LLC v. Eastman Chemical Co.,* 172 S.W.3d 512, 524 (Tenn.2005). A contract implied in fact arises when circumstances establish the parties' mutual intent to contract. *Id.* (citing *Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 153–54 (1966)). A contract implied in law, also referred to as a quasi-contract, is created by law without the assent of the parties based upon considerations of reason and justice. *Id.* A court can impose a quasi-contract based upon various theories, including, but not limited to, unjust enrichment. *Id.*

■■■ Under Tennessee law:

the elements of an unjust enrichment claim are: 1)[a] benefit conferred upon the defendant by the plaintiff; 2) appre-

ciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Id.* (internal quotation and citation omitted). The most significant requirement for the establishment of a quasi-contract on grounds of unjust enrichment "is that the benefit to the defendant be unjust." *Id.* at 525.

### 4. Certification

■■■ The decision of whether to utilize the procedures for certification of a question to the highest court of a state is within the sound discretion of a district court. *Transamerica Ins. Co. v. Duro Bag Mfg. Co.,* 50 F.3d 370, 372 (6th Cir. 1995). Certification "is most appropriate when the question is new and state law is unsettled." *Id.* Certification should also be used "where an important question of state law has arisen solely in federal court." *Geib v. Amoco Oil Co.,* 29 F.3d 1050, 1060 (6th Cir.1994).[6]

### C. Findings and Conclusions

■■■ Although there is no decision of the Tennessee appellate courts directly on point, there is sufficient Tennessee case law that the issues presented herein are not rendered completely unsettled. *See Transamerica,* 50 F.3d at 372 (district court did not abuse its discretion in declining to certify issue as to the interpretation of certain language in an insurance contract despite absence of a Kentucky case addressing the exact issue before the court where there were well-settled principles for insurance contract interpretation set forth in Kentucky case law).[7] I conclude certification of the question of whether

**6.** Rule 23 of the Tennessee Rules of the Supreme Court provides in pertinent part the Supreme Court of Tennessee may answer questions certified to it by a United States District Court in Tennessee "at its discretion." *Haley v. University of Tennessee–Knoxville,* 188 S.W.3d 518, 521 (2006) (citing Tenn. Sup.

Ct. R. 23, § 1). Thus, it is by no means certain that the Tennessee Supreme Court would actually accept this question assuming *arguendo* the Court decided to exercise its discretion to certify the question.

**7.** When the Sixth Circuit was confronted with a similar circumstance in *SST Fitness Corp.,*

Tennessee would follow the majority or minority position on reimbursement is unnecessary as the Court is regularly required to use past precedent not directly on point in order to extrapolate rules to apply to new situations, and it can do so here.

■ I conclude the Supreme Court of Tennessee would follow the majority position and recognize reimbursement is available to an insurer when an adequate reservation of rights has been made even if the policy contains no express reimbursement provision. I conclude the Supreme Court of Tennessee would allow reimbursement if the insurer reserved its rights to reimbursement by providing a timely, specific and adequate notice to the insured that the insurer would seek reimbursement and it was subsequently determined the insurer had no duty to defend.

### 1. Defense Costs

■ I find RLI provided a timely and explicit notice of its reservation of the right to seek reimbursement for defense costs in the Underlying Litigation. The letter sent to Defendants on May 26, 2005, after the underlying carrier exhausted its policy limits on May 23, 2005 and after this declaratory judgment action was initiated, provided specific and adequate notice to Defendants that RLI would seek reimbursement of defense costs. The letter plainly states:

RLI reserves the right to ... seek reimbursement from you for counsel fees and costs incurred by RLI if it is determined the subject claims are not within policy coverage.

[Doc. No. 57–9 at 23].[8]

Defendants objected to RLI's reservation-of-rights letters, but not until November 8, 2005. RLI promptly responded to Defendants' November 8, 2005 letter with a letter dated November 11, 2005, which stated in pertinent part:

As you know, RLI believes that no duty to defend or indemnify exists under the policy. RLI has provided its insureds with a defense under a reservation of rights for approximately six months now, and its insureds have benefitted from that defense. By accepting a defense from RLI under these circumstances, an implied contractual right exists for RLI to seek reimbursement.. . .

[*Id.* at 30–31].

■ I conclude the undisputed facts establish a quasi-contract implied, at least, in law. The record shows nearly six months elapsed between the time RLI agreed to provide a defense to the Insureds under a reservation of rights and the time the Insureds objected to RLI's right to reimbursement. For nearly six months, Defendants permitted RLI to undertake the payment of continuing defense costs, including the fees of counsel who continued to represent Defendants after RLI assumed payment of defense costs in the Underlying Litigation.

For almost six months, Defendants did not opt to utilize any alternative to acceptance of RLI's offer of a defense in the Underlying Litigation subject to its reservation of rights. Despite their awareness of RLI's reservation of its right to reimbursement, the record is devoid of any evidence Defendants declined RLI's offer of a defense subject to the right of reimbursement. Defendants did not choose to pay for their own defense and seek recovery of their defense costs or bring a declaratory judgment action to determine

---

there is no indication in the decision that the Sixth Circuit sought certification of the state law question to the Supreme Court of Ohio.

**8.** The declaratory judgment complaint also seeks reimbursement.

whether RLI had a duty to defend under the Policy. *See SST Fitness Corp.*, 309 F.3d at 920 (SST accepted United National's reservation of rights when it knew of United National's reservation-of-rights letter and accepted defense costs without objection).

■ Defendants rely upon the handwritten document, in which RLI agreed to provide a defense if an underlying policy was exhausted but did not specifically assert a right to reimbursement, to contend RLI has no right to reimbursement. Defendants' argument appears to be that RLI did not adequately reserve its rights, including the right to seek reimbursement, in the handwritten document. If the handwritten document was the only notice of RLI's reservation of rights, Defendants' argument would have merit. However, Defendants' argument fails because it is not the only notice of RLI's reservation provided to Defendants. The handwritten document states the defense would be taken under a strict reservation of rights. At the time the handwritten document was signed on behalf of RLI, the question of whether RLI would provide a defense was contingent on exhaustion of the underlying policy. Once RLI actually undertook the defense, it quickly filed a declaratory judgment action and sent a letter explicitly reserving its right to seek reimbursement of defense costs.

While Defendants argue they were presented with a Hobson's choice, which argument essentially tracks Judge Clay's dissenting opinion in *SST Fitness*, the same argument seemingly has been rejected by the Sixth Circuit's majority opinion in *SST Fitness*. 309 F.3d at 923. Defendants have presented no evidence they told RLI to cease payment of defense costs or told RLI to make an election as to whether to defend under a reservation of rights or refuse to defend. Defendants have presented no material evidence the provision of a defense under a reservation of rights harmed them in any way.

Given this Court's determination that RLI had no duty to defend or indemnify Defendants with regard to the claims asserted in the Underlying Litigation, I conclude the evidence before the Court establishes RLI has a right to reimbursement under a quasi-contract theory of unjust enrichment. Particularly in the almost six months between the time Defendants received RLI's May 2005 reservation-of-rights letter, which provided notice of RLI's reservation of a right to reimbursement, and the time Defendants objected to RLI's reservation of rights, the uncontroverted evidence shows Defendants accepted RLI's offer of a defense subject to a reservation of rights by allowing RLI to fund the continuing defense.

It would be inequitable for Defendants to retain the benefits of the defense without repayment of the defense costs. Defendant received the benefit of a defense they were not paying for, Defendants knew they were receiving a defense they were not funding, and Defendants were aware from RLI's reservation-of-rights letter that RLI's claimed a right to reimbursement if it was determined RLI owed no duty to defend. Under these circumstances, it would be inequitable for Defendants to retain the benefit of the defense without payment of the value thereof. *See Browder v. Hite*, 602 S.W.2d 489, 491–92 (Tenn.Ct.App.1980) (contracts created by law in Tennessee are based upon the principle that a party who receives a benefit it desires, which benefit either adds to the property of the party or saves it from expense or loss, under circumstances which make it inequitable for the receiving party to retain such benefit without compensation, must make compensation for the benefit it received).

Accordingly, I conclude RLI is entitled to reimbursement for the attorney's fees, expenses, and costs that RLI paid for the defense of the Defendants in the Underlying Litigation.

## 2. Indemnity

■ I find RLI provided a timely and explicit notice of its reservation of the right to seek reimbursement for indemnity payments made on behalf of the Defendants in the Underlying Litigation. RLI first specifically noted its right to seek reimbursement of any settlement payment in its November 2005 correspondence, which was before any settlement payment was negotiated or made. Defendants did immediately reject RLI's position, and Defendants characterize RLI's decision to make the settlement payment as a business decision by RLI to limit its exposure. To some degree, RLI acknowledged in its complaint that it received a benefit by alleging it provided a defense to protect its interests, as well as the interests of the Insureds [Doc. No. 1 at 6, ¶ 18]. It is undisputed, however, the $225,000 indemnity payment resulted in the settlement of the "glass claims" against Defendants, claims which this Court found were not covered under the Policy when it determined there was no duty to defend or indemnify any of the claims in the Underlying Litigation.

■ In RLI's response to Defendants' first set of interrogatories and requests for production, RLI stated the following regarding the settlement:

On January 12, 2006, RLI received an e-mail from Grover E. Asmus, II, in which Mr. Asmus advised that he had received a call from J. Don Foster indicating that the attorney for the Grand Pointe Condominium Owners Association would accept $450,000.00 from the Defendants to settle the "glass issues" provided that an underlying co-Defendant contributed settlement proceeds totaling $1.5 million. J. Don Foster is listed as a carbon copy recipient of this e-mail. On March 7, 2006, at the urging of the Defendants' lawyers, including J. Don Foster, RLI contributed $225,000.00 toward a settlement of issues relating to the sliding glass doors and windows in the Grand Pointe Condominium.

[Doc. No. 53–2 at 4].

RLI argued settlement of the "glass claims" was reasonable and that Defendants "knew perfectly well that RLI was making the payment to facilitate the settlement of an indisputably serious claim under the condition that it would seek to recoup that payment if its position on coverage proved correct" [Doc. No. 70 at 12]. RLI further noted its contribution to the "glass settlement" was only half of the settlement amount because its contribution to the settlement was matched by CIC [*id.* at n. 6]. RLI argues Defendants, through counsel, participated in the settlement negotiations, and asserts there is no evidence showing Defendants objected to the settlement [*id.* at 13].

Little evidence was submitted concerning the discussions leading to the settlement of the "glass claims." However, the November 2005 letters exchanged by counsel for RLI and counsel for the Insureds and the discovery responses indicate the Insureds and the counsel they selected were active participants in the settlement. None of the letters appear to question the amount of the settlement or constitute an objection by the Insureds to a settlement payment by RLI.

In *Nobel Ins. Co. v. Austin Powder, Co.*, 256 F.Supp.2d 937, 940 (W.D.Ark., 2003), the district court, attempting to predict the law of Arkansas, stated that in light of the decision in *SST Fitness*, 309 F.3d at 919, an insurer could recoup both the settlement costs and litigation expenses "only if" the insurer timely reserved its right to

recoup such costs and provided specific and adequate notice of the same. In this instance, RLI did not mention recoupment of settlement payment in its May 25, 2005 letter, but it did do so in its November 7, 2005 letter, some five months before it issued a check settling the "glass claims" on March 7, 2006.

In *United Pacific Ins. Co. v. Safety–Kleen Corp.*, No. C–89–3119 MHP, 1993 WL 505393, * 1–2 (N.D.Cal. Nov.10, 1993), *aff'd,* 79 F.3d 1154, 1996 WL 121913 (9th Cir.1996), United Pacific provided a defense to its insured Safety–Kleen in two tort actions under a reservation of rights and also brought a declaratory judgment action to determine its duty to defend or indemnify under the policy it issued to Safety–Kleen. After the court held United Pacific had a duty to defend, but no duty to indemnify, it found United Pacific was entitled to full reimbursement from Safety–Kleen for all money paid as indemnification in settlement of the underlying actions. *Id.* at *10–11. This Court not only found RLI had no duty to indemnify Defendants, but it also found RLI had no duty to defend Defendants under the Policy.

Defendants rely on Section VII. N of the Policy and item 4 of the declarations page to assert the amount of reimbursement for settlement payments made by RLI should be limited to $10,000.00, the retained limit. The Policy also provides RLI "the sole right to make any settlement of any suit as we deem expedient." [Doc. No. 1–3 at 5]. Defendant's argument is not persuasive, however, because RLI had no duty to indemnify the "glass claims" since the Policy provided no coverage for such claims.

The retained limit in a commercial general liability policy "is akin to a deductible." *American Mfrs. Mut. Ins. Co. v. Seco/Warwick Corp.*, 266 F.Supp.2d 1259, 1263 (D.Colo.2003). The conclusion that the retained limit of $10,000 set forth in the RLI policy is intended to be akin or similar to a deductible is borne out by the language in the defense of claims or suits subsection of the Policy. RLI's ability to settle claims under the Policy and obtain reimbursement of the retained limit for such claims does not appear to apply to claims not covered by the Policy. Thus, contrary to Defendants' assertions, I concluded the Policy does not limit RLI's reimbursement to $10,000 for the settlement payment made on the "glass claims."

Accordingly, I conclude RLI is entitled to reimbursement for the settlement payment made by RLI in the Underlying Litigation.

### 3. Amount of Reimbursement

As noted, RLI seeks reimbursement of the $481,512.36 it spent on behalf of the Defendants in the Underlying Litigation. In its memorandum in support of its motion for a summary judgment, RLI states it spent:

> $481,512.36 in its defense of the underlying litigation. These expenditures were reasonable under the circumstances. The underlying litigation was complex, and the plaintiffs sought damages of several million dollars. The nature of the claims required the retention of paid experts with expertise in engineering and construction disciplines. With approximately 17 defendants and 20 third party defendants, the Underlying Litigation required time-intensive discovery. RLI spent several thousand dollars on deposition transcripts and copies. RLI contributed $225,000.00 to settle discrete claims made against the Insureds. There is no dispute that RLI incurred these expenses.

[*id.* at 18–19].

#### a. Amount of Defense Costs

RLI asserts an analysis of whether the defense costs and fees incurred by

RLI in the Underlying Litigation were reasonable should not be based on a line-by-line scrutiny or review of individual isolated time entries [*id.* at 19]. The undersigned agrees. In *Taco Bell Corp. v. Continental Cas. Co.,* No. 01 C 0438, 2003 WL 1475035, *12 (N.D.Ill. Mar.17, 2003), the court distinguished fee shifting from recovery of actual expenses paid. The *Taco Bell* Court rejected a line-by-line scrutiny of an insurer's defense costs where the amounts were actually paid. *Id.* The court restricted its analysis of the reasonableness of the insurer's expenditures in defending its insured "to an 'overview' of the litigant's 'aggregate costs to ensure that they were reasonable in relation to the stakes of the [Underlying Litigation] and [the] litigation strategy.'" *Id.* (quoting *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 521 (7th Cir. 1999)).

Like the situation in *Taco Bell,* it is undisputed RLI has paid defense costs to Defendants' counsel of choice and Defendants have not challenged the reasonableness of RLI's expenditures on a line-by-line basis. The underlying carrier exhausted the limits of its policy at the time RLI began to provide a defense in the Underlying Litigation. CIC, which also issued a policy to Defendants, and RLI "agreed to share the funding of the defense of the Underlying Litigation on a 50/50 basis." [Doc. No. 57–9, Johnson affidavit at 4, ¶ 8]. Thus, the total amount of reimbursement sought by RLI represents only a limited portion of the total cost of providing a defense in the Underlying Litigation.

 Significantly, at the time RLI agreed to provide a defense in the Underlying Litigation, it agreed with Defendants as to the counsel who would continue to represent them in the Underlying Litigation. An insurer "clearly possesses no right to control the methods or means chosen by an attorney to defend the insured." *Givens v. Mullikin ex rel. Estate of McElwaney,* 75 S.W.3d 383, 394 (Tenn. 2002). An insurer "cannot control the details of the attorney's performance, dictate the strategy or tactics employed, or limit the attorney's professional discretion" regarding his or her representation of the insured. *Id.* (quoting *Petition of Youngblood,* 895 S.W.2d 322, 328 (Tenn.1995)). "Any ... arrangement or device which effectively limits ... the attorney's professional judgment on behalf of or loyalty to the client is prohibited ... and ... would not be consistent with public policy." *Id.*

Thus, if the fees, expenses and costs of the defense were considered unreasonable by the Defendants at the time they were incurred, it was incumbent upon them to raise the issue with their counsel and/or RLI. The record contains no evidence the Defendants ever questioned the reasonableness of the fees, expenses and costs. Indeed, Defendants have admitted that the attorneys' fees, the single largest amount sought in reimbursement for defense costs, are reasonable [Doc. No. 57–8 at 3–4]. There is no suggestion by Defendants that the value of the defense is less than the costs paid by RLI. Therefore, I find all of the defense costs, $256,512.36 ($481,512.36 minus $225,000), are reasonable, represent the value of the defense, and should be awarded to RLI.

### b. Amount of Indemnity

On March 7, 2006, RLI paid $225,000 to the Daniell, Upton, Perry and Morris PC Trust Account to settle certain "glass claims" against its Insureds [Doc. Nos. 57–9 at 7 & 58 at 18]. Defendants agree RLI paid $225,000, or 1/15th of the total amount of the settlement [Doc. Nos. 67 at 5 & 74–2 at 4]. A copy of the settlement check states the payment was made in "partial settlement of the claim." [Doc. No. 57–3 at 42].

Defendants have not presented any evidence calling into question the reasonableness of the settlement payment. Indeed, they contend no party can affirm or deny the reasonableness of a settlement [Doc. No. 72 at 5 n. 2]. Although Defendants have argued the $225,000 settlement payment constituted a business decision by RLI to limit its exposure and they have argued they did not agree to reimbursement of the settlement payment, Defendants have not argued the settlement payment was unreasonable or was agreed upon over their objection to the settlement. There is simply no factual dispute regarding the amount or appropriateness of the settlement payment.

Therefore, I find the settlement payment of $225,000 should be awarded to RLI.

Accordingly, I conclude RLI should be awarded reimbursement in the total amount of $481,512.36.

### c. Prejudgment Interest

In its motion, RLI also seeks prejudgment interest from the Defendants [Doc. No. 144]. Specifically, RLI seeks an award of $39,451.62 in prejudgment interest, which represents an award of prejudgment interest at a simple rate of 10% per annum [*id.* at 24–26]. RLI seeks a total award of $520,963.98, or reimbursement of $481,512.36 in defense and indemnity costs plus prejudgment interest of $39,451.62 [*id.* at 24].[9]

In Tennessee, prejudgment interest may be awarded under Tenn.Code Ann. § 47–14–123, *Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 659 (6th Cir.2003), which provides for an award of prejudgment interest as an element of damages "in accordance with the principles of equity at any rate not in excess of the maximum effective rate of ten percent (10%) per annum."

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn.1992) (quoting Tenn.Code Ann. § 47–14–123). By its plain meaning, Tenn.Code Ann. § 47–14–123 limits awards of prejudgment interest to "interest . . . calculated at simple interest with a 10% per annum cap." *Id.* at 447.

An award of prejudgment interest "is allowed in accordance with the principles of equity," but it is not considered to be a penalty directed at the defendant. *Id.* at 446. "The Tennessee Supreme Court has held that, under § 47–12–123, 'the court must decide whether [an] award of prejudgment interest is fair, given the particular circumstances of the case.'" *Stamtec,* 346 F.3d at 659 (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998)). As part of its "equitable decision, 'a court must keep in mind that the purpose of awarding [prejudgment] interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled . . .'" *Id.* at 659–60 (quoting *Myint,* 970 S.W.2d at 927). The *Myint* decision "shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds." *Id.* at 660 (quoting *Scholz v. S.B. Int'l, Inc.,* 40 S.W.3d 78, 83 (Tenn.Ct.App.2000)). *Myint* also "concluded that '[f]airness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant . . .'" *Id. See also Union Planters Bank, N.A. v. Continental Cas. Co.,* 478 F.3d 759, 767 (6th Cir.2007) (purpose of prejudgment interest is to compensate a deserving party for the loss of use of its funds).

Under Tennessee law, a court has considerable discretion in determining

---

**9.** This was the amount of prejudgment interest sought by RLI at the time it filed its summary judgment motion on January 19, 2007 [Doc. No. 57].

whether prejudgment interest should be awarded. *Story v. Lanier,* 166 S.W.3d 167, 181 (Tenn.Ct.App.2004). Prejudgment interest need not be awarded in every case. *Id.* Prejudgment interest is inappropriate: "(1) when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of the use of money would have little weight, (2) when the party seeking prejudgment interest has unreasonably delayed the proceedings after suit was filed or (3) when the party seeking prejudgment interest has already been otherwise compensated for the lost time of its money." *Id.* at 181–82. Moreover, a request for prejudgment interest need not be made in the complaint. *Id.* at 182.

In this instance, RLI's May 26, 2005 letter to Defendants which reserved its rights, including its right to reimbursement, did not explicitly reserve RLI's right to an award of prejudgment interest on the monies it spent in the Underlying Litigation [Doc. No. 57–9 at 16, 23]. While RLI did not explicitly request prejudgment interest in its complaint, it did request "any such further relief to which RLI may be entitled." [Doc. No. 1 at 7].

Attached to RLI's memorandum in support of its motion for summary judgment is a calculation of prejudgment interest [Doc. No. 58–15 at 2–5]. RLI began its calculation of prejudgment interest in September 2005 [*id.* at 2]. Under Tennessee law an insurer which breaches its duty to defend is liable for the amount of the policy plus the reasonable costs incurred in providing a defense for its insured. *National Service Fire Ins. Co. v. Williams,* 61 Tenn.App. 362, 454 S.W.2d 362, 370 (1969). RLI asserts it should be reimbursed for the loss of the use of its funds. I conclude, however, that until August 11, 2006, when this Court determined RLI had no duty to defend or indemnify the Defendants in the Underlying Litigation, RLI expended its funds, at least in part, to protect itself from potential liability for breach of any duty to defend its insureds in the Underlying Litigation. Only after it was determined RLI had no duty to defend or indemnify the Defendants, did RLI actually suffer a loss of the use of its funds, which up until that time had been paid, in part, to protect RLI from any liability.

Defendants have not directly addressed the interest rate requested by RLI for prejudgment interest. I conclude, however, that an award of prejudgment interest at 5% simple interest per annum from the date of this Court's grant of summary judgment in favor of RLI, August 11, 2006, will fully compensate RLI for its loss of the use of funds utilized by it to provide a defense and indemnification in the Underlying Litigation. An award of prejudgment interest at a rate of 5% simple interest per annum beginning on August 11, 2006, is both fair and equitable and it is necessary to fully compensate RLI for the loss of the use of funds it spent to provide a defense and indemnification it did not owe to Defendants.

As RLI has calculated the amount of prejudgment interest from September 2005 using a 10% rate of interest, it is necessary for RLI to submit a new calculation of prejudgment interest consistent with this recommendation. Therefore, it is **ORDERED** that no later than five (5) days after the issuance of this report and recommendation, RLI shall file a supplemental statement calculating the amount of prejudgment interest it seeks from Defendants at a rate of 5% simple interest per annum beginning on August 11, 2006.

### 2. Defendants' Joint and Several Liability

Defendants argue not all Defendants should be held jointly and severally

liable for reimbursement [Doc. No. 67 at 17]. Defendants assert, without citing any precedent for their argument, that Harbour and Defendant Robert H. Chandler ("Chandler") should not be held liable, much less jointly and severally liable, for reimbursement because they did not face the same exposure as the other Defendants in the Underlying Litigation as proven by the Alabama court's eventual ruling in the Underlying Litigation that Harbour and Chandler had no liability [id.]. Defendants also argue Chandler is not a named insured under the Policy so he cannot be held liable for reimbursement [id. at 18].

RLI argues all Defendants, including Harbour and Chandler, are jointly and severally liable to it for fees, costs and expenses incurred by RLI in providing a defense and indemnity [Doc. No. 70 at 15]. RLI asserts that, under Alabama law, liability for damages, except for punitive damages, is joint and several, and, thus, each insured benefitted equally from RLI's defense in the Underlying Litigation [id.]. RLI contends "[u]nder the circumstances, there is no way to allocate time and expenses between the Insureds or the respective counts." [id.].

It is undisputed Chandler is the only Defendant who is not a named insured under the Policy [Doc. No. 1–3 at 29]. In the first amended complaint filed in the Underlying Litigation, the Plaintiffs sued Chandler and Harbour as members of Century Construction of Tennessee, LLC and also sued Chandler as a manager of Century Construction of Tennessee [Doc. No. 1–5 at 4]. Chandler and Harbour were sued in the same capacities in the second amended complaint [Doc. No. 1–6 at 4] and the third amended complaint filed in the Underlying Litigation [Doc. No. 1–7 at 4]. In the fourth amended complaint in the Underlying Litigation, the plaintiffs sued Chandler asserting he was the alter ego of Century Construction of Tennessee and

was a consultant and/or construction manager for the Grand Pointe project, "with overall responsibility for management of the construction of the project." [Doc. No. 1–8 at 5].

The Policy states insured persons include members of a covered limited liability company with respect to the insured's liability as such and managers with respect to their duties as managers. [Doc. No. 1–3 at 6]. As Chandler was sued in the Underlying Litigation in his capacity as a member and/or manager of Century Construction of Tennessee, LLC, a named insured, Chandler was an insured under the RLI policy. Further, by the time the fourth amended complaint was filed in the Underlying Litigation it was asserted Chandler was the alter ego of the Century Construction of Tennessee, LLC. In addition, RLI's reservation-of-rights letter of May 26, 2005, specifically listed Chandler as an insured. No evidence was presented that Chandler refused the defense and indemnity because he was not an insured.

I conclude Chandler is an insured under the Policy based upon the claims asserted against him in the Underlying Litigation. Chandler was provided notice of RLI's reservation of rights. Although Defendants argued Chandler stands on a slightly different footing than the other Defendants because he is not a named insured, they do not assert RLI did not provide a defense to Chandler in the Underlying Litigation.

Defendants next argue that because the Alabama court found both Chandler and Harbour had no liability in the Underlying Litigation, neither should be held liable for reimbursement. The summary judgment in favor of Chandler and Harbour was granted at a time subsequent to this Court's grant of summary judgment in favor of RLI. Defendants have not demonstrated the defense provided by RLI

was not accepted by Chandler and Harbour or did not contribute to the Alabama court's finding that Chandler and Harbour had no liability in the Underlying Litigation. Under these circumstances, Defendants' argument fails.

Accordingly, I conclude Defendants Chandler and Harbour are jointly and severally liable for reimbursement.

### D. Alabama Law

After extensively arguing Tennessee law does not permit reimbursement, Defendants assert Alabama law should be applied to RLI's reservation of rights and, under Alabama law, reimbursement would not be permitted [Doc. No. 67 at 19–21]. RLI asserts this action involves a Policy delivered in Chattanooga, Tennessee, and, therefore, Tennessee law governs the parties' obligations to each other [Doc. No. 70 at 3]. RLI further contends its "reservation of rights letters and communications, delivered to the Insureds [in] care of their attorney in Alabama, merely clarified and specified RLI's position on its obligations under the Tennessee insurance contract." [*id.*].

In the Court's memorandum of August 11, 2006, which accompanied the Court's order granting RLI's motion for summary judgment and declaring RLI had no duty to defend or indemnify Defendants, this Court stated that "[a]ll parties agree Tennessee law controls in this declaratory judgment action." [Case No. 1:05–CV–161, Doc. No. 114 at 8 n. 4]. No party disputes this is the law of the case. *See Hayden v. Rhode Island,* 13 Fed.Appx. 301, 302 (6th Cir.2001).

 RLI undertook to defend its Insureds under a reservation of "rights or defenses available to the company under the provisions of the policy, or under the law of the state of Tennessee" [Doc. No. 57–9 at 16, 23], including the right "to seek reimbursement from you for counsel fees

and costs incurred by RLI if it is determined the subject claims are not within policy coverage." [*id.*]. Thus, RLI's reservation of rights is not, as Defendants contend, a separate contract under Alabama law. Accordingly, I conclude Defendants' argument Alabama law controls the issue of RLI's right to reimbursement in this litigation is meritless.

In conclusion, I **RECOMMEND:** (1) RLI's motion for a summary judgment [Doc. No. 57] be **GRANTED;** (2) RLI be **AWARDED** $481,512.36; and (3) RLI be **AWARDED** pre-judgment interest at a rate of 5% per annum beginning August 11, 2006.

### IV. *Defendants' Motion for Leave and RLI's Motion to Strike*

RLI moves to strike the Defendants' response to RLI's reply to Defendants' response in opposition to RLI's motion for a summary judgment [Doc. No. 73]. RLI correctly asserts E.D. TN. LR 7.1(a) contemplates an opening brief, an answering brief, and a reply brief [*id.* at 2]. E.D. TN. LR 7.1(d) states in pertinent part that "[n]o additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the court." Defendants did not obtain leave of the court to file a supplemental brief.

However, after RLI filed its motion to strike, Defendants moved for leave to file a supplemental brief in response to RLI's reply to Defendants' response in opposition to RLI's motion for summary judgment under E.D. TN. LR 7.1(d) [Doc. No. 74]. Attached to Defendants' motion is a copy of their response [Doc. No. 74–2]. This document is identical to the Defendants' response to RLI's reply to Defendants' response in opposition to RLI's motion for summary judgment [Doc. No. 72], which is the subject of RLI's motion to strike.

Defendants state their supplemental brief will assist the Court and provide further clarification of the issues in dispute before the Court. RLI has not filed a response in opposition to Defendants' motion for leave. If Defendants are not given leave to file their supplemental brief, they may simply raise any arguments contained therein in objections to this report and recommendation. Therefore, in the interest of judicial economy and in order to fully consider the parties' positions, I have considered the supplemental brief.

Accordingly, I **RECOMMEND:** (1) Defendants' motion for leave to file a supplemental brief in response to RLI's reply to Defendants' response in opposition to RLI's motion for summary judgment under E.D. TN. LR 7.1(d) [Doc. No. 74] be **GRANTED** and (2) RLI's motion to strike the Defendants' response to RLI's reply to Defendants' response in opposition to RLI's motion for a summary judgment [Doc. No. 73] be **DENIED as MOOT.**

## V. *Conclusion*

For the reasons stated above, I **RECOMMEND:**[10]

1. RLI's motion for a summary judgment [Doc. No. 57] be **GRANTED;**
2. RLI be **AWARDED** $481,512.36, as the fees, costs, expenses, and indemnity provided by RLI in connection with the Underlying Litigation, and that all Defendants be held jointly and severally liable to reimburse RLI;

3. RLI be **AWARDED** pre-judgment interest at a rate of 5% per annum calculated from August 11, 2006, the date of this Court's grant of summary judgment declaring RLI had no duty to defend or indemnify Defendants with regard to the claims in the Underlying Litigation;
4. Defendants' motion for leave to file a supplemental brief in response to RLI's reply to Defendants' response in opposition to RLI's motion for summary judgment under E.D. TN. LR 7.1(d) [Doc. No. 74] [Doc. No. 74] be **GRANTED;** and
5. RLI's motion to strike Defendants' supplemental brief in response to RLI's reply to Defendants' response in opposition to RLI's motion for summary judgment under E.D. TN. LR 7.1 [Doc. No. 73] be **DENIED as MOOT.**

It is also **ORDERED** that no later than five (5) days after the issuance of this report and recommendation, RLI shall file a supplemental statement calculating the amount of prejudgment interest at a rate of 5% simple interest per annum beginning on August 11, 2006.

June 12, 1007.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

LEE, United States Magistrate Judge.

Before the Court is the supplemental calculation of prejudgment interest filed by

---

**10.** Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn,* 474 U.S. 140, 149 n. 7, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers,* 829 F.2d 1370, 1373 (6th Cir.1987).

Plaintiff RLI Insurance Company ("RLI") [Doc. No. 77]. On June 12, 2007, the undersigned issued a report and recommendation with regard to the reimbursement of costs, fees and expenses incurred by RLI in the defense of the Defendants in certain underlying litigation (the "Underlying Litigation"). The report included a recommendation that RLI be awarded prejudgment interest at a rate of 5% per annum calculated from August 11, 2006, the date of this Court's grant of summary judgment declaring RLI had no duty to defend or indemnity Defendants with regard to the claims in the Underlying Litigation [Doc. No. 76 at 42].

As RLI had previously calculated the amount of prejudgment interest it sought using September 2005 as the beginning date for the accrual of prejudgment interest and using a 10% rate of interest, the undersigned ordered RLI to submit "a supplemental statement calculating the amount of prejudgment interest it seeks from Defendants at a rate of 5% simple interest per annum beginning on August 11, 2006." [Doc. No. 76 at 37]. On June 19, 2007, as directed, RLI filed its supplemental calculation of prejudgment interest [Doc. No. 77].

On June 26, 2007, Defendants filed an objection to the report and recommendation [Doc. No. 78]. Defendants' objection did not contain a specific objection to the recommendation concerning the calculation of prejudgment interest, but it did contain a general objection to the recommendation that RLI "be awarded a judgment in the amount of Four Hundred Eighty–One Thousand Five Hundred Twelve Dollars and Thirty-six Cents, plus 5% pre-judgment interest . . . ." [*Id.* at 1]. Defendants have not filed a separate pleading in response to RLI's supplemental calculation of prejudgment interest.

 As explained in its supplemental calculation, RLI seeks $19,662.64 in prejudgment interest, which represents prejudgment interest calculated at a rate of 5% per annum from August 11, 2006, at the earliest[1] through June 12, 2007, the date the report and recommendation was issued. To the extent the Defendants intended their objection to the report and recommendation to be considered an objection to the calculation of interest using the parameters set in the report and recommendation, the "filing of vague, general, or conclusory objections does not meet the requirement of specific objections [to a magistrate's report and recommendation] and is tantamount to a complete failure to object." *Slater v. Potter,* 28 Fed.Appx. 512, 513 (6th Cir.2002). Defendants' failure to file any specific objection to RLI's supplemental calculation can also be deemed a waiver of an objection to the calculation. *See* E.D. TN. LR 7.1.

 RLI's submitted calculation appears to be consistent with the parameters set for the calculation in the report and recommendation. Therefore, to the extent the Court accepts the recommendation that prejudgment interest be awarded at a rate of 5% beginning as of August 11, 2006, I **RECOMMEND** that RLI be **AWARDED** prejudgment interest in the amount of **$19,662.64,** which represents interest at a rate of 5% per annum calculated from August 11, 2006, at the earliest through June 12, 2007.[2]

July 11, 2007.

---

1. For payments made after August 11, 2006, RLI used the month of payment for its calculation [Doc. No. 77].

2. Any objections to this supplemental report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the